## Bradley Royce *vs.* Joseph Guggenheim.

If a landlord erects, without the tenant's consent, on land included in the demise of a dwelling-house, a permanent structure which renders unfit for use two rooms that the tenant was using for kitchen and bed-room, the tenant may elect to treat it as an eviction, and give up the premises, and refuse to pay rent.

Contract for the rent from March 7 to April 7, 1869, of real estate leased by the plaintiff to the defendant for three years from September 7, 1868, by a lease, dated on that day, which described the demised premises as " the small wooden house and store, now occupied by said Guggenheim and numbered 117 on Eliot Street in Boston," and contained no express covenant on the part of the landlord.

At the trial in the superior court, before *Rockwell,* J., the defendant relied on his eviction from the premises, in defence against the action; and the plaintiff requested a ruling " that, in order to constitute an eviction, whether of a part, or of the whole of said premises, it must be as if closed up actual and entire, there being evidence of some use of the alleged evicted rooms." The judge declined so to rule; but instructed the jury " that if the plaintiff, before the month for which rent was sought to be recovered, had evicted the defendant from two or more of the rooms, he cannot recover for that month's rent; that if the rooms, at the time of the lease and for some time after, had light and air enough to make them fit for use as kitchen and sleeping-chamber, and were thus used, and if, after the erection by the plaintiff of the new building in the back yard, against the house, closing the windows of those rooms, those rooms were made entirely unfit for those purposes, and by reason of that unfitness were abandoned, and this erection was not by the license or consent of the defendant, this was an eviction so as to effect a suspension of the rent, and it was not essential to such eviction that the doors of the rooms should have been closed up by the plaintiff so as to prevent the defendant's entry into the same." The jury returned a verdict for the defendant, and the plaintiff alleged exceptions. The bill of exceptions contained no statement of the evidence on the

question of eviction, other than appears in the above statement of the instructions given or requested.

*H. H. Mather*, for the plaintiff.

*J. L. Eldridge*, for the defendant.

GRAY, J.   The eviction of a tenant from the demised premises, either by the landlord or by title paramount, is a bar to any demand for rent, because it deprives him of the whole consideration for which rent was to be paid.  Gilbert on Rents, 145. *Morse* v. *Goddard*, 13 Met. 177.  And his eviction by the landlord from part of the premises suspends the entire rent, because the landlord "shall not so apportion his own wrong as to enforce the lessee to pay anything for the residue."  Hale, C. J., in *Hodgkins* v. *Robson*, 1 Ventr. 276, 277.  *Page* v. *Parr*, Style, 432.  *Shumway* v. *Collins*, 6 Gray, 227.  *Leishman* v. *White*, 1 Allen, 489.

To constitute an eviction which will operate as a suspension of rent, it is not necessary that there should be an actual physical expulsion of the tenant from any part of the premises.  Any act of a permanent character, done by the landlord, or by his procurement, with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or of a part thereof, to which he yields and abandons possession, may be treated as an eviction. *Smith* v. *Raleigh*, 3 Camp. 513.  *Upton* v. *Townend*, 17 C. B. 30.

But no lawful act, done by the landlord upon an adjoining estate owned by him, for the purpose of improving that estate, and not for the purpose of depriving the tenant of the enjoyment of any part of the demised premises, can be deemed an eviction. The mere fact that by an act or default of the landlord, not unlawful in itself, nor accompanied with any intention to affect the enjoyment of the premises demised, they have been rendered uninhabitable, is not sufficient.  It is now well settled, both here and in England, that in a lease of a building for a dwelling-house or store no covenant is implied that it should be fit for occupation. *Hart* v. *Windsor*, 12 M. & W. 68.  *Dutton* v. *Gerrish*, 9 Cush. 89.  *Foster* v. *Peyser*, Ib. 242.  *Welles* v. *Castles*, 3 Gray, 323. And the English authorities, ancient and modern, are conclusive, that even where the landlord is bound by custom or express cove-

nant to repair, and by his failure to do so the premises become uninhabitable, or unfit for the purposes for which they were leased, the tenant has no right to quit the premises, or to refuse to pay rent according to his covenant, but his only remedy is by action for damages. 14 Hen. IV. 27, pl. 35. 27 Hen. VI. 10, pl. 6. Bro. Ab. Dette, 18, 72. Parke, B., in 12 M. & W. 84. *Surplice* v. *Farnsworth,* 7 Man. & Gr. 576. *Kramer* v. *Cook,* 7 Gray, 550. *Leavitt* v. *Fletcher,* 10 Allen, 119, 121.

In the recent English case of *Upton* v. *Townend,* 17 C. B. 30, after elaborate arguments upon the question, all the judges substantially agreed upon the definition of eviction. Chief Justice Jervis said : " I think it may now be taken to mean this ; not a mere trespass and nothing more, but something of a grave and permanent character, done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises." Mr. Justice Williams said : " There clearly are some acts of interference by the landlord with the tenant's enjoyment of the premises, which do not amount to an eviction, but which may be either mere acts of trespass, or eviction, according to the intention with which they are done. If these acts amount to a clear indication of intention on the landlord's part that the tenant shall no longer continue to hold the premises, they would constitute an eviction." Mr. Justice Crowder said : " Eviction, properly so called, is a wrongful act of the landlord, which operates the expulsion or amotion of the tenant from the land. The question here is, whether there has been an eviction as it is popularly called, a putting out or depriving the tenants of the subject matter of the demise." And Mr. Justice Willes said : " If the plaintiff is liable for what has been done, does it amount to an eviction ? I am of opinion that it does, as being an act, of a permanent character, done by the landlord in order to deprive, and which had the effect of depriving, the tenant of the use of the thing demised, or of a part of it." The act of the landlord which was there held, upon a statement authorizing the court to draw such inferences as a jury might, to amount to an eviction, was the rebuilding of the tenements upon their destruction by fire, (which the lessor had covenanted to do) in such a manner as permanently to alter the character of the demised premises.

In a still later case, where the tenant, being desirous to under-let, put in a man to show the rooms, and posted in the window a bill stating that they were to be let; and the landlord, being annoyed by this proceeding and by the conduct of the man, turned him out of the house and took down the bill, but left the keys in the rooms; and the tenant did not return, and contended that he had been evicted and therefore was not liable for the rent; it was ruled at *nisi prius,* and affirmed by the court of queen's bench upon a motion for a new trial, that it was a question for the jury, whether the act of the landlord was done with the intention of evicting the tenant, or simply for the purpose of expelling the man whom he had put in; and, the verdict being for the land-lord, the court refused to set it aside. *Henderson* v. *Mears,* 1 Fost. & Finl. 636; *S. C.* 28 L. J. (N. S.) Q. B. 305; 5 Jur. (N. S.) 709; 7 Weekly Rep. 554.

It was argued for the defendant, in the present case, that even the erection of a building by the landlord upon adjoining land would be an. eviction, if it stopped the tenant's windows; and his counsel cited *Dyett* v. *Pendleton,* 8 Cowen, 727, in which the New York court of errors held that the creation of a nuisance by the landlord in another tenement under the same roof, by bringing lewd women into it, who made a great noise and disturbance there at night, in consequence of which the lessee and his family left the demised premises, was evidence to go to the jury under a plea of eviction. Upon that case, it is to be observed, 1st. The act of the landlord was an unlawful act, and not a lawful use of his other tenement; 2d. The decision of the court of errors was not that the facts in law amounted to an eviction, but only that they should have been submitted to the jury; 3d. That decision reversed the unanimous judgment of the supreme court, as reported in 4 Cowen, 581; 4th. It has since been considered, even in New York, an extreme case. Savage, C. J., in *Etheridge* v. *Osborn,* 12 Wend. 529, 532. Nelson, C. J., in *Ogilvie* v. *Hull,* 5 Hill, 52, 54. Bronson, C. J., in *Gilhooley* v. *Washington,* 4 Comst. 217, 219. In *Palmer* v. *Wetmore,* 2 Sandf. 316, the superior court of the city of New York, consisting of Chief Jus-tice Oakley and Justices Vanderpool and Sandford, adjudged that

the mere fact of the erection of a building by a landlord on his adjoining land, so as to obstruct and darken the tenant's windows, was not an eviction. To the same effect is *Myers* v. *Gemmel*, 10 Barb. 537. See also the learned opinion of Judge Daly in *Edgerton* v. *Page*, 1 Hilton, 320; *S. C.* 20 N. Y. 281. We cannot therefore rest our judgment in the case at bar upon that of *Dyett* v. *Pendleton*. Nor is it necessary so to do.

The lease from the plaintiff to the defendant was of a house and shop, and contained no express covenant on the part of the landlord. By the law of this Commonwealth, no easement of light and air exists over adjoining lands unless by express grant or covenant. *Collier* v. *Pierce*, 7 Gray, 18. *Rogers* v. *Sawin*, 10 Gray, 376. *Brooks* v. *Reynolds*, *ante*, 31. If the plaintiff had conveyed away the adjoining estate, the grantee might have built thereon so as to stop up the defendant's windows, without affording the latter any right of action for damages, or of suspension or abatement of his rent. And so if the landlord himself erected a building upon any part of the adjoining estate, for the purpose of improving that estate, it was a lawful act, which violated no obligation which he was under to the defendant, and did not constitute an eviction. If, on the other hand, such an act was done by the landlord for the purpose and with the effect of making the defendant's tenement or any room therein uninhabitable, the defendant might perhaps at his election treat it as an eviction, and give up the premises and refuse to pay rent. At any rate he might do so, if the building was erected upon part of the curtilage included in his lease, closing the windows of his dwelling-house so as to make a part of it uninhabitable; because that would be the erection of a permanent structure on part of the demised premises, materially changing the character and beneficial enjoyment thereof; and in such case the landlord would be responsible for the effect of his wrongful act, without further proof of unlawful intent. *Upton* v. *Townend*, 17 C. B. 30, above cited.

Applying these principles to the bill of exceptions, we are of opinion that the plaintiff fails to show that he was aggrieved by the instructions given at the trial. Under these instructions, the

jury must have found that by the plaintiff's erection of a new
building in the back yard against the house, without the tenant's
consent, two of the rooms therein, previously used as a kitchen and
bedroom, were made entirely unfit for those purposes, and by
reason of that unfitness were abandoned.   The bill of exceptions
does not show that the plaintiff contended that the rooms could
have been used for any other purpose after the erection of the
new building, or that the back yard was not part of the demised
premises, or made any question, or asked for any ruling, as to the
intention with which he erected that building.

*Exceptions overruled.*