## DOUGHERTY v. SEYMOUR.

16   289<br>4a 256

1. BAWDY-HOUSE — KEEPING UNLAWFUL.— The keeping of a bawdy-house is against public policy and unlawful both at common law and under the statute.
2. LEASING PREMISES FOR ILLEGAL USES.— A contract leasing premises for this purpose will not be enforced by the courts.
3. PROOF OF ILLEGAL PURPOSE.— And where it appears by extrinsic evidence that the lease was executed with the understanding that the premises would be so used, the contract is equally tainted, and the same result follows though there is nothing in the written language employed to indicate the unlawful purpose.

*Error to Superior Court of Denver.*

ACTION to recover rent alleged to be due upon a written lease. Defense that the demised premises were leased to be used as a bawdy-house, and that they were so used with the knowledge and consent of the landlord. Judgment for defendant.

Mr. WILLIAM C. GHOST, for plaintiff in error.

Messrs. COE & FREEMAN, for defendant in error.

PER CURIAM. At common law the keeping of a house of prostitution is an indictable offense. Such places are regarded with so much disfavor, that not only the keeper of the house, but also a landlord knowingly leasing the same for the purpose of bawdry, is held to be guilty of a criminal

offense when the house is actually put to such immoral use. 2 Wharton's Crim. Law (2d ed.), sec. 1459; 1 Bishop, Crim. Law (7th ed.), sec. 500; *Commonwealth v. Harrington*, 3 Pick. 26.

These salutary rules have received the almost universal sanction of the courts wherever the common law has been administered. Colorado, at an early date, following the lead of many of the older states, adopted the common law of England, so far as the same might be found applicable and of a general nature. Gen. Stat. 1883, sec. 197.

The keeping of a bawdy-house tends directly to debauch the public morals. It is against public policy and unlawful both at common law and under our statute. Gen. Stat., sec. 839.

It is said, however, that as the written lease upon which this action is founded is silent as to the purposes for which the house was to be used, it is a valid contract and can be enforced, notwithstanding the use to which it was known that the house would be put. It is true the contract is *prima facie* good, but extrinsic evidence shows it to have been tainted with moral turpitude, which overthrows its *prima facie* appearance and exposes its baseness and illegality.

As to whether or not the house was let to be used as a bawdy-house, it is true the evidence is conflicting. It was, however, the peculiar province of the trial judge to determine upon which side lay the greater weight. This court is not at liberty, under the circumstances, to substitute its judgment upon the mere weight of evidence for that of the trial court, with the superior advantages possessed by the latter by reason of the living witnesses appearing before it. Accepting the finding as correct, and we have a case in which both parties to the lease are shown to have entered into the same with the understanding that the leased premises were to be used for the purposes of prostitution. Such contracts, being *contra bonos mores*, cannot be enforced. *Ralston v. Boady*, 20 Ga. 449; Bishop on Contracts, sec.

506; 2 Chitty on Contracts, p. 981; Story on Conf. of Laws, sec. 253; *Dyett v. Pendleton*, 8 Cowen, 737; *Lightfoot v. Tenant*, 3 Bos. & Pull. 356; *Thomas v. The City of Richmond*, 12 Wall. 349; *Forsythe v. The State*, 6 Ohio, 8.

The judgment of the district court is right and must be affirmed.

*Affirmed.*