LAY, APPELLANT, v. BENNETT ET AL., APPELLEES.

1. PRACTICE.

When the only question in the case is whether the undisputed facts relied upon by the defendant constitutes a defense, judgment should be rendered either for the plaintiff in the amount claimed, or in favor of the defendant. Nothing can justify a judgment for the recovery of part of the demand.

2. LANDLORD AND TENANT—EVICTION—RENT.

An eviction of a tenant from the demised premises by paramount title, or by the landlord, is a bar to a demand for rent. To constitute an eviction which will bar or suspend rent, a direct or physical expulsion is not necessary. Any act, willfully done by the landlord, which has the effect of driving the tenant from the premises, amounts to and may be treated as an eviction.

3. SAME.

Knowingly leasing premises for immoral purposes is unlawful; and where the tenant has been driven from his tenement by persecution by persons unlawfully placed in juxtaposition to him by his landlord, no rent can be claimed for the time he is out of possession.

*Appeal from the County Court of Arapahoe County.*

Mr. THOMAS H. HARDCASTLE and Mr. JOHN G. TAYLOR, for appellant.

Messrs. BENEDICT & PHELPS and Mr. HARRY C. DAVIS, for appellees.

THOMSON, J., delivered the opinion of the court.

This is an action for the recovery of rent. On the 19th day of August, 1890, Bennett & Meyers, appellees, leased to F. H. Lay certain rooms on the second floor of their three-story building on the corner of Seventeenth and Stout streets, in the city of Denver, for the term of two years. Lay occupied the rooms with his family, consisting of his wife and child, until the 19th day of July, 1891, when he abandoned them, and never returned. This suit is for rent which accrued between the 19th day of July and the 5th day of October, 1891. The defense is, conduct of plaintiffs amounting to an eviction. The evidence is that the third story of the building was occupied by lewd and disorderly female tenants of the plaintiffs, who were in the habit of receiving male visitors; that the occupants and their visitors indulged in boisterous and disorderly conduct, jumping upon the floor, screaming, singing, and using profane and obscene language, until a late hour in the night, breaking the sleep of defendant and his family, depriving them of the beneficial enjoyment of the premises, and giving the building an unsavory reputation. The defendant made frequent complaints to the plaintiffs of the character and conduct of these tenants; and in January, 1891, the plaintiffs caused them to remove, and supplied their place with men. While the rooms were so occupied, there was no noise, and the defendant was undisturbed; but, in March, 1891, the men vacated the building, the women were restored, and the unseemly noise and disturbance recommenced and continued, until the defendant, unable longer to endure the invasion of his peace, abandoned the premises. During this last period he repeated his com-

plaints several times to the plaintiffs, who promised again to eject the obnoxious characters, but nothing in that direction was ever done.

The foregoing facts are undisputed, and if they constitute a defense to the action, judgment should have been for the defendant. If they are not a defense, the plaintiffs were entitled to judgment for $220.50, which was the exact amount due. The judgment should have been for this amount or for nothing; but the court by some process, peculiar to itself, arrived at the conclusion that the plaintiffs ought to have $130, and accordingly rendered the judgment for which this appeal is taken.

There is nothing in the record to justify this judgment. It is absolutely without support from any evidence in the case, and is clearly and unmistakably erroneous. The evidence gives rise to a question which it is necessary to dispose of, to the end that, upon a retrial of the case, the rights of the parties may be intelligently settled. The answer to this question will determine whether the facts in evidence may be shown in bar of the action for rent. The authorities are all agreed that the eviction of a tenant from the demised premises by title paramount, or by the landlord, is a bar to any demand for rent, because it deprives him of the consideration for which rent was to be paid. In many of the cases in which this doctrine was announced, there was an actual dispossession of the lessee by the lessor; but there is also an agreement among the cases that to constitute an eviction which will bar or suspend rent, a direct or physical expulsion is not necessary; and that any act, willfully done by the landlord, which has the effect of driving the tenant from the premises, amounts to, and may be treated as, an eviction. As to what conduct on the part of the landlord will justify the tenant in abandoning the premises, and interposing the plea of eviction to an action for the recovery of subsequently accrued rent, there has been considerable adjudication; and an examination of some of the leading cases will materially

aid us, not only in ascertaining the law, but in applying it to the facts before us.

In *Dyett v. Pendleton*, 8 Cowen, 727, the facts, as stated by Crary, senator, were, that the plaintiff introduced into the house, certain rooms in which had been leased to the defendant, divers lewd women, who made a great deal of indecent noise and disturbance, disturbing the defendant and other persons sleeping in the house, bringing odium and infamy upon the house as a place of ill-fame, and compelling the defendant, as a consequence of such practices, to leave the premises, to which he did not return. The court held that proof of these facts ought to have been received, because they tended to prove a constructive eviction, which would exonerate the defendant from the payment of rent. This case gave rise to considerable discussion, and was the subject of more or less comment in a number of adjudicated cases. In *Royce v. Guggenheim*, 106 Mass. 201, Gray, J., holding that it was unnecessary to rest the judgment of his court upon that case, remarks concerning it that it has since been considered, even in New York, an extreme case, and refers to *Etheridge v. Osborn*, 12 Wend. 529; *Ogilvie v. Hull*, 5 Hill, 52; *Gilhooley v. Washington*, 4 Comst. 217; and in the opinion in *De Witt v. Pierson*, 112 Mass. 8, the following occurs: "The case of *Dyett v. Pendleton*, 8 Cow. 727, is relied upon by the defendant. This has been called an extreme case, and it has been modified, if not overruled, by later decisions in New York; and this court declined to rest its judgment upon it in *Royce v. Guggenheim*. In *Etheridge v. Osborn*, the court, referring to the case of *Dyett v. Pendleton*, say that it carried the doctrine of eviction to its extreme verge. In *Ogilvie v. Hull*, Nelson, C. J., says, speaking of the same case, that it shows only an application of the doctrine of eviction to an extreme case; and the court, in *Gilhooley v. Washington*, say that it has been regarded as an extreme case. These criticisms, if they may be so called, are certainly not very severe, and would hardly seem to justify the language of the Massachusetts court. But in the later New York cases, the

doctrine of *Dyett v. Pendleton* has met with distinct and unqualified approval. *Cohen v. Dupont*, 1 Sandf. 260 ; *Edgerton v. Page*, 20 N. Y. 281 ; *Ins. Co. v. Sherman*, 46 id. 370.

In *Edgerton v. Page*, Grover, J., delivering the opinion of the court, says : " Whether this eviction must be actual, by the forcible removal of the tenant by the landlord from the demised premises or a portion thereof, was not settled in this state until the case of *Dyett v. Pendleton*. In that case the principle was established by the court for the correction of errors, that when the lessor created a nuisance in the vicinity of the demised premises, or was guilty of acts that precluded the tenant from the beneficial enjoyment of the premises, in consequence of which the tenant abandoned the possession before the rent became due, the lessor's action for the recovery of rent was barred, although the lessor had not forcibly turned the tenant out of possession. Ever since that case, this has been considered as a settled rule of law, binding upon all the courts of this state. Such act of the lessor, accompanied by an abandonment of possession by the lessee, is deemed a virtual expulsion of the tenant, and equally with an actual expulsion bars the recovery of rent. The reason of the rule is, that the tenant has been deprived of the enjoyment of the demised premises by the wrongful act of the landlord ; and thus the consideration of his agreement to pay the rent has failed."

See, also, *Leadbeater v. Roth*, 25 Ill. 587 ; *Jackson v. Eddy*, 12 Mo. 209. In the latter case, the court, approving the decision in *Dyett v. Pendleton*, say : " The consideration of the lessee's undertaking to pay rent is, the quiet, peaceable and indisputable possession of the premises leased, and is, in its nature, a condition precedent to the payment of rent. If the lessor by any wrongful act disturbs the possession which he should protect and defend, he thereby forfeits his right, and the lessee may abandon the premises leased, and thereby exonerate himself from liability to pay rent." The principal case is also cited with approval in *Dougherty v. Seymour*, 16 Colo. 289.

In neither of the two Massachusetts cases to which we have referred, although they both question the authority of *Dyett v. Pendleton,* is any different principle stated. In both it is held that to constitute an eviction, which would have the effect of suspending rent, actual ouster is not necessary ; but that any act done by the landlord with the intention and effect of depriving the tenant of the enjoyment of the premises, to which he yields, and abandons possession, may be treated as an eviction. The facts in each of these cases were so essentially different from those in *Dyett v. Pendleton* that the latter case was inapplicable ; and in *De Witt v. Pierson,* Endicott, J., continuing his reference to that case, says : " But that case was decided upon a very different state of facts, and contained many elements to constitute an eviction, which are wanting in the case at bar. The defendant there, under a lease for years, had been in more than a year, when the plaintiff, who occupied adjoining rooms under the same roof, himself created the disturbance and nuisance complained of, and the tenant within a month abandoned his tenement. *The intent to evict, and actual abandonment might well have been found,* but to hold that there was an eviction here would be to go far beyond that decision."

It will be observed that in this case the intention of the landlord to evict the tenant is made an element of the acts done, determinative of their character ; but we think the meaning of this is sufficiently explained in *Royce v. Guggenheim.* A distinction is there made between an act which the lessor might lawfully do upon his adjoining property, the effect of which might be to diminish the tenant's beneficial enjoyment of that occupied by him, and an act which is in violation of law. In the former case the act must have been done with the intention of expelling the tenant; but it was also held, even where the act complained of was lawful, that if its necessary effect was to change the character and beneficial enjoyment of the demised premises, the landlord would be responsible for the result of the act without further proof of unlawful intent. In the kind of proof required, there is,

and must in the nature of things be, a clear distinction between an unlawful act, and a lawful act done with unlawful intent; and, where the act constituting the eviction is in itself unlawful, proof of the act is sufficient, because the wrongdoer is presumed to intend the consequences of his acts. Knowingly leasing premises for immoral purposes is unlawful. *Dougherty v. Seymour, supra.* In this case the evidence seems to establish that while the defendant was in the occupancy of the premises under his lease, lewd women, who had previously been expelled from the building by the plaintiffs on account of their character and conduct, were reintroduced, and again occupied the rooms above him; that the plaintiffs knew, or ought to have known, that these rooms were to be used by them for the purposes of prostitution; and that, upon being made acquainted with the fact that their conduct was so boisterous and offensive that the peace and quiet of the defendant and his family were destroyed, and the building made disreputable and infamous, no steps were taken for their removal. The existence of these facts would justify the defendant in regarding himself as evicted, and in abandoning the premises; and the finding of their existence by a jury, or by the court sitting as a jury, would require judgment to be given for the defendant. Where a tenant has been driven from his tenement by the persecution of persons unlawfully placed in juxtaposition to him by his landlord, the landlord can claim no rent for the time the tenant is out of possession. His own unlawful act is a sufficient answer to his demand.

In its findings, the court below manifestly disregarded the evidence, and it is assumed that no question in the case was considered by it. Let the judgment be reversed.

*Reversed.*