9   299
37S  168

# HYMAN v. THE JOCKEY CLUB WINE, LIQUOR AND CIGAR COMPANY.

1. COUNTERCLAIMS.

Causes of action in favor of a defendant connected with the subject of the action may, it seems, be counterclaimed by him, notwithstanding they did not exist at the time of the commencement of the action.

2. AMENDMENTS—DISCRETION—REVIEW.

The allowance of amendments to pleadings is largely in the discretion of the trial court, and its orders in that behalf are not reviewable except in cases of obvious abuse of discretion.

3. COVENANTS—RELEASE.

After breach of covenant to pay rent by a lessee, the covenant may be waived by the parties by a new parol agreement in respect of the amount of rent, and the new contract and continuing tenancy will be a sufficient consideration for the new promise.

4. LANDLORD AND TENANT—EVICTION—RENT.

If a lessor wrongfully deprives a tenant of the whole or any part of the premises, the tenant is discharged from the whole rent until the possession is restored.

5. SAME.

An actual expulsion of the tenant, or an intentional disturbance by the landlord which so seriously disturbs the tenant's possession as to compel an abandonment of the possession by him, or which deprives him of their beneficial enjoyment, amounts to an eviction.

6. SAME—IMMATERIAL ERROR.

The jury found, in an action on a lease for rent, that no rent was due on the first day of a certain month, and that on or about that day the defendant was evicted. The proof was that by the terms of the lease the rent was payable in advance on the first day of every month, and that the eviction occurred on the second day. *Held*, that while the finding may have been erroneous, the error was harmless. If the month's rent had been paid, it could have been recovered by the tenant by reason of the eviction.

*Appeal from the District Court of Arapahoe County.*

ON THE 1st day of June, 1892, appellant leased to appellee certain business property in the city of Denver for the term of 10 years, rent to be paid monthly in advance; being $833.33 rent. A lease was made and executed by the parties.

Appellee, to secure the payment of the rent, advanced to the appellant $1,666.66, and entered into possession of the premises. Appellees paid the full rent of $833.33 for each month up to the 1st day of August, 1893. On that date a new arrangement was made between the parties, and the rent reduced, and appellee paid $600 a month for the months of August and September, 1893. On the 1st of October there was a further reduction in the rent, by agreement of the parties, and appellee paid $500 a month to the 1st of May, 1894. On the 1st of May, 1894, there was another reduction of rent, and appellee paid $300 a month to February 1, 1895, when appellee's occupation of the premises ceased. On February 2, 1895, appellant brought suit by attachment against appellee; alleging in the affidavit (1) that the demand was upon an express contract in writing for the direct and unconditional payment of money only, and was for money due on a certain lease in writing, by the terms of which said sum sued for is overdue; (2) that the defendant fraudulently conveyed, transferred, or assigned its property and effects so as to hinder or delay its creditors, and particularly the plaintiff. The attachment was on the stock of goods in store in the leased premises. On the 11th day of February, 1895, appellant brought suit against appellee for the sum of $7,299.95, claiming that the amounts paid and received as rent from the time of the first reduction to the close of the occupation of the premises were not in full of the rent, nor received as such, but were paid and received on account of the rent, and that there was due and owing the plaintiff for each and every month the difference between the amount received and $833.33, the amount provided for in the lease.

Appellee answered, admitting the lease; the occupation of the premises as alleged in the complaint until February 1, 1895; that defendant paid the full rent provided in the lease up to August, 1893, at which time a new agreement was made, by which the written agreement was waived and modified; that the rent was to be $600 a month from and

after August 1st, in full payment of the specified rent in the lease; that appellee paid $600 for each month to October 1, 1893; that on that date a further agreement was made reducing the rent to $500 a month, and appellee paid that amount each and every month to the 1st of May, 1894, when there was a further agreement by which the rent was reduced to $300 a month, which had been paid each and every month to the 1st of February, 1895. Denying any indebtedness whatsoever, and by a counterclaim asking a judgment for $1,666.66, the amount deposited by appellee with the appellant as security for the rent. It is further alleged in the answer that on or about the 1st day of February, 1895, the plaintiff wrongfully and forcibly entered into the said premises and evicted appellee, and has kept appellee out of the possession from that time.

Appellant filed a replication admitting payment of $833.33 each month until August 1, 1893. Denying that at the time, or any subsequent time, there was any agreement reducing the rent to $600, $500, or $300 a month. Admitting the receipt of $600 a month in full for rent of August and September, 1893. Denying that the $500 and $300 subsequently paid was paid and received as payment in full, but was paid and received as installments each month on the stipulated rent in the lease.

The case was tried to a jury, resulting in a verdict for defendant (appellee) against the appellant for $1,666.66, which was afterwards remitted upon request of the court, and a judgment entered for defendant (the appellee), from which the appeal was prosecuted to this court.

Messrs. LIPSCOMB & HODGES, for appellant.

Messrs. BETTS & RINKLE, for appellee.

REED, P. J., delivered the opinion of the court.

The answer of the appellee, upon which the case was tried, was an amended answer, embracing in substance the

same facts pleaded in the former, but more specific and detailed, and more sharply defining and tendering the issues to be tried. Application was made for leave to file the amended answer, which was granted. Error is assigned upon the order of the court allowing the amendment. Nothing appears in the abstract to show that appellant made any objection or excepted to the ruling. The counterclaim for $1,666.66 was in the amended answer, and not in the former. It is contended that for this reason the action of the court was erroneous. The object of allowing amendments is to get before the jury all the facts and contentions of each party in regard to the subject-matter of the suit, so that there will be no misunderstanding of the questions to be determined; and, so long as the pleadings are limited to matters pertaining to the transaction, amendments are not only in the discretion of the court, but the court is required to allow them, so that the entire controversy shall be submitted for adjudication. It is contended that the claim for the $1,666.66 was one originating after suit was brought. I do not so understand it. It is shown by pleading and evidence that the money was advanced as security for rent at the time the lease was executed. If not applied as rent, or returned, it was the proper subject of a counterclaim.

In my view of section 57 of the Civil Code, it is unimportant whether it arose before or after the bringing of the suit. It comes under the first subdivision, which is, after defining a "counterclaim," as follows: "A cause of action arising out of the transaction set forth in the complaint or answer, as the foundation of the plaintiff's claim or defendant's defense, or connected with the subject of the action." The claim in question was clearly "connected with the subject of the action."

Counsel appears to rely upon the second subdivision, which is: "In an action arising upon contract, any other cause of action arising also upon contract, *and existing at the commencement of the action.*"

I cannot see that it applies. By the first, all matters "*con-*

*nected* with the subject of the action" are embraced, regardless of the time. By the second, " *any other cause of action arising also upon the contract.*" But these must exist at the commencement of the suit. They are separate and distinct matters. The allowing of amendments is largely in the discretion of the court, and no error can be predicated upon the allowance of amendments unless there is an obvious abuse of discretion. In this case the amendment was clearly permissible. If not, as the sum awarded upon the counterclaim by the jury was remitted, I fail to see how it worked an injury. It being admitted that from August 1, 1893, until the occupancy of the premises ceased, appellee paid and appellant received—First, $600 a month; second, $500 a month; and, third, $300 a month,—narrowed the controversy in that respect to the question whether, by subsequent parol agreements, the expressed provision in the lease for $833.33 a month was abrogated or waived and replaced by the subsequent parol agreements, and the subsequent payments were, respectively, in full for the rent of the premises. After a breach of the covenant by the appellee to pay rent at $833.33 a month, or at the time the rent was due, and appellee refused to pay the same, it was competent for the parties, by a new parol agreement, to waive the covenant, modify or abrogate the lease in respect to the amount of rent, and substitute a new agreement as to the amount, and the continuing tenancy of appellee was sufficient consideration for the new contract. See Wood, Landl. & Ten. 44; Tayl. Landl. & Ten., secs. 497–501. It has been held that such new contract terminated the tenancy under the lease, and that the subsequent tenancy was under the new contract; and such, it seems, should be the effect. See *Taylour v. Wildin*, L. R. 3 Exch. 303; *Blyth v. Dennett*, 13 C. B. 178.

Whether or not there were new contracts from time to time in regard to the amount of the rent to be paid by appellee, and a waiver of the condition of the lease, and whether the new amounts were paid as agreed, and received by appellant as payment in full, were questions of fact to be deter-

mined by the jury, and were found against appellant; and, upon a careful examination of the evidence, we must conclude that such findings were warranted.

The only remaining question is whether there was an eviction of appellee at the date it ceased paying rent, so as to relieve it from subsequent liability. This was also a question for the jury, under the instructions of the court.

The instructions given by the court were as follows: "The court instructs the jury that some acts of interference by the landlord with the tenant's enjoyment of the premises may be mere acts of trespass, or they may amount to an eviction. The question whether they partake of the latter character depends upon the intention with which they are done, and the character of the acts. If they clearly indicate an intention on the landlord's part that the tenant should no longer continue to hold the premises, and it thereby loses the beneficial use of the same, this would constitute an eviction; otherwise they would amount to no more than acts of trespass. To constitute an eviction, the acts of interference by the landlord with the tenant's possession must clearly indicate an intention on the part of the landlord that the tenant shall no longer continue to hold the premises, or some material part thereof. There must be something of a permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises, or some part thereof. The question of eviction or no eviction is a question to be decided by the jury, in view of all the facts and circumstances as proved on the trial."

Instruction given on the court's own motion: "The court instructs the jury that the principle upon which a tenant is required to pay rent is the beneficial enjoyment of the premises, unmolested in any way by the landlord; and in this case, if the jury believe from the evidence that after defendant went into possession of the premises the plaintiff took possession of any part of the premises leased, against the consent of the defendant, and in such a way as to prevent the defendant having the beneficial use of the premises leased, this is,

in law, an eviction, and releases the defendant from the payment of any more rent while such eviction continues."

They were lucid, brief, and fairly submitted the question to the jury. This issue was found, also, for appellee; and, although the testimony was conflicting, there was sufficient to warrant the finding, although it was found by the jury that there was no rent in arrear.

On February 1st the evidence shows the premises to have been taken forcible possession of by the sheriff under orders from appellant, and that, after retaining possession for some days, the sheriff delivered the keys to appellant, who retained them and the possession from that time, and appellant placed upon the premises a notice that they were for rent, with application to be made to him. Such acts, in law, amounted to an eviction, and released appellee from all subsequent liability under the lease until the possession was restored. The rule of law is well settled, that, if the lessor himself wrongfully deprives the tenant of the whole or any part of the premises, the tenant is discharged from the payment of the whole rent until the possession is restored. Tayl. Landl. & Ten., secs. 378–380.

In 2 Wood, Landl. & Ten. 1096, the rule is stated that: "An actual expulsion of the tenant, or intentional disturbance by the landlord, or by any other person acting by his authority, or by virtue of a legal right vested in them in any manner, which so seriously disturbs the tenant's possession as to compel an abandonment of the premises by him, or which deprives him of their beneficial enjoyment, amounts to an eviction, and the rent is suspended from the time of such disturbance." And see *Morrison v. Chadwick*, 7 C. B. 266; *Salmon v. Smith*, 1 Saund. 204; 2 Wood, Landl. & Ten. 1101; *Royce v. Guggenhiem*, 106 Mass. 201; *Graham v. Anderson*, 3 Harr. (Del.) 364; *Bennet v. Bittle*, 4 Rawle, 339; *Fitchburg Manufactory Corp. v. Melven*, 15 Mass. 268; *Day v. Watson*, 8 Mich. 535.

It is true, appellant testified, in effect, that he wished to lease for the benefit of appellee, and relieve it from lia-

bility to the extent of the rent received; but this was rather lame, and looks like the result of an afterthought.   He could not appoint himself agent for appellee to lease the property. No appointment as agent by appellee was shown, or even a request upon its part.   All the facts and circumstances show that appellant regarded the lease as terminated, and that his acts were those of the owner, and not the agent.

The jury found no rent due on February 1, 1895; that, on or about that date, appellee was evicted by appellant. Consequently there was no liability after that date.   It is true that the rent for the month was payable in advance February 1st, and the eviction occurred February 2d; but, as there was no use of the premises by the tenant by reason of the eviction, the jury may technically have erred in finding no rent due on February 1st.   But the error is harmless. If the month's rent had been paid, it could have been recovered back by the tenant by reason of the eviction.   So the result would have been the same.   The attachment proceeding, as a matter of course, failed with the failure of the principal case.   The judgment of the district court must be affirmed.

*Affirmed.*