## No. 11,085.

### THOMAS CUSACK CO. *v.* PRATT.

Decided July 6, 1925. Rehearing denied September 8, 1925.

Action for rent.   Judgment for plaintiff.

*Reversed.*

1. LANDLORD AND TENANT—*Action for Rent—Defense.* Where a company leased the roof of a building for the purpose of displaying signs thereon, the fact that the municipality refused to grant a permit for the erection of signs was no defense to an action for rent of the leased premises.

2. CONTRACTS—*Municipalities—Police Power.* Where parties enter into a contract for the lease of premises to be used for erecting signs thereon, they do so with the knowledge that municipalities may, in the exercise of their police power, refuse to grant permits therefor.

3. LANDLORD AND TENANT—*Lease—Implied Covenant for Enjoyment.*

Unless expressed to the contrary, a lease contains of necessity an implied covenant for the quiet enjoyment of the leased premises.

4.      *Lease—Eviction—Rent.*   If a lessor wrongfully deprives the tenant of the whole or any part of the leased premises, the tenant is discharged from the payment of the whole rent until possession is restored.

5.      *Eviction.*   An eviction may be actual or constructive, and any act of the lessor by which his tenant is deprived of the enjoyment of the whole or a material part of the demised premises, or which shows an intent on the part of the lessor to seriously disturb or interfere with the tenant's enjoyment, amounts in law to an eviction.

6.      *Lease—Violation.*   Where a company leased the roof of a building for sign display purposes, and the lessor thereafter constructed a filling station in such a manner as to partially obstruct a view of the signs from the streets, it is held that this was a violation of the covenants of the lease.

7.      *Action for Rent—Bar.*   When a lessor is guilty of acts that preclude the tenant from the beneficial enjoyment of the premises, in consequence of which he abandons possession before the rent becomes due, the lessor's action for recovery of the rent is barred.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. WILLIAM H. ANDREW, for plaintiff in error.

Mr. JOHN R. SMITH, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

PLAINTIFF Pratt owns 4 lots in block 81 at the northeast corner of East Fourteenth avenue and Logan street in the City of Denver, having a frontage of 100 feet on Logan street and 125 feet on the avenue. He built on the east end of these lots, setting back 10 feet from the west

line of the alley that runs north and south through the center of the block, a brick garage 40 feet wide east and west and 100 feet long north and south. This left of the 4 lots wholly unoccupied and entirely open to view from the adjacent highways in front of the garage, a strip 65 feet east and west and 100 feet north and south. The garage contained 24 compartments, 12 of them facing or opening east on the alley and 12 facing west towards Logan street. In the month of May, 1921, the plaintiff made a lease to the defendant Thomas Cusack Company, a corporation, for a period of ten years at a rental of $540.00 per year, payable in monthly installments, on that part of these lots described in the written lease as: "The premises (with the right of ingress and egress to and from same) known as the roof of the garage building (mentioned above) for the erection and maintenance of advertising sign boards thereon". One clause of the lease reads: "It is agreed that the lessor may terminate this lease at any time by giving the lessee sixty days written notice, should the lessor decide to wreck the above building and construct a permanent one on the premises." Another clause is: "The said company is given no estate or interest in and to control or right of possession of the premises except the license or permission above mentioned."

There is no express covenant in the lease for quiet enjoyment. When the lease was actually executed the ground was bare of any structure or improvements, the entire surface space of the 4 lots being open to view from the adjacent highways. Though the lease was executed in May, 1921, the garage was not then built, delay in construction for more than a year having occurred because of some objection by the city or litigation over a permit therefor. By agreement of the parties the rent was not to begin until the owner had completed work on the garage November 1, 1922, when the defendant took possession and put up its signboard on the roof. The defendant paid rent for the months of November and December but not

afterwards. In the month of December, 1922, the plaintiff erected, or through its lessee caused to be erected, a filling station on the strip 65 by 100 feet immediately in front of the garage, the west and south walls of which were set back a number of feet from the adjoining sidewalks. The building and its approaches and equipment occupied or covered a space of about 50 by 50 feet. On or about the 27th of December the city notified both parties that no permit would be given for an advertising sign on this property and that the sign which had been put on the roof of the garage by the defendant in the previous November should be taken down. The filling station had been theretofore completed, as already stated, and the defendant had paid two months' rent. Soon after this notice about the permit was given, the defendant, considering the filling station as a violation by the plaintiff of the implied covenant in the lease for quiet enjoyment, took down the sign, vacated the premises and refused to pay rent. Thereupon this action was brought by the plaintiff to recover the January rent and by supplemental complaint the rent thereafter accruing up to the time of trial. The answer to the complaint makes reference to the refusal of the city to give a permit, but we are in accord with the trial court that, though the city refused to give to the defendant a permit, this would be no defense to this action. The law is that in contracts of this nature the parties enter into them with knowledge that municipalities may, in the exercise of their police power, refuse to grant such permits. Had the defendant wished to guard against the possibility of a refusal, it was its privilege to refuse a lease, which it did not, unless it contained a clause for its termination if the necessary permit could not be secured. As we read the record the trial court was right in holding that the only legal defense, if any, interposed by the defendant in its answer was that, in legal sense, building the filling station immediately in front of the garage obstructed the view of the public of advertising signs that were or might be placed on the garage roof,

and that this in law constituted a breach of the implied covenant for quiet enjoyment, and that defendant having treated it as an eviction and having quit possession, was released from the payment of rent. Trial was to the court without a jury. Findings of fact were for plaintiff and judgment was entered for the amount of the rent sued for.

In an oral opinion which is brought up in the record, the court said: "I have arrived at the conclusion that in permitting the erection of that filling station on the front part of the lots, the defendant violated no implied covenant at all.

To suppose that the owner of that valuable property intended to tie up the entire property for ten years for the trifling sum that he is to receive from the Cusack company for permission to use the roof of the garage for advertising purpose, is of course, incredible.

If the Cusack company had desired any such extraordinary concessions they should have certainly included it in their contract. If they had presented a contract with that proviso, it is incredible that the owner for a moment would entertain the idea of signing it; it would be an absurdity. There is a considerable distance between the filling station and the roof of this garage."

The court further held that: "There are places, of course, on Logan street where the view of the signboard would be obstructed" but added that "a good view is obtained coming north on Logan street and going up 14th avenue", and that no one "could go in either of those directions without having his attention attracted to these signs", and further said that: "There are some points * * * where the view is considerably interfered with." The court, however, concluded that, inasmuch as pedestrians and occupants of vehicles would not remain stationary in the vicinity of this corner, but would be moving about from time to time, they would be able to see or read these signs and concluded: "But, in any event, it is a contingency that is not provided against by the contract

and I hold that no implied covenant is violated by the erection of the filling station."

From the foregoing excerpts alone it is not altogether clear whether the judgment was based upon the court's conclusion or holding that this lease did not contain an implied covenant of quiet enjoyment, or because the building of the filling station did not constitute such an obstruction as to make it a breach of such implied covenant. But we think from observations of the trial judge during the trial and questions he asked of counsel, that the judicial view below was that all prior negotiations of the parties merged in the written lease, and as there was no express or implied covenant of quiet enjoyment, there was no breach of contract by plaintiff. The court explicitly said that if the parties had wanted such a covenant they should have put it into the lease. Furthermore, when counsel for defendant stated his position to be that, inasmuch as the defendant had leased this space on the top of the garage, the understanding was that the plaintiff was not in any way to obstruct the sign so as to spoil it, the judge said: "The lease does not say so. There is no provision in the lease to any such effect."

We think that neither position of the court can be sustained. In *Milheim v. Baxter,* 46 Colo. 155, 157, 103 Pac. 376 (133 Am. St. Rep. 50) we said: "Unless expressed to the contrary, a lease contains, of necessity, an implied covenant for the quiet enjoyment of the leased premises." In *Avery v. Dougherty,* 102 Ind. 443, 2 N. E. 123, 52 Am. Rep. 680, the opinion on this subject is an able one and the conclusion there reached is in accord with ours in the Milheim-Baxter Case. In *Hyman v. Jockey Club Co.,* 9 Colo. App. 299, 305, 48 Pac. 671, it was said: "The rule of law is well settled, that, if the lessor himself wrongfully deprives the tenant of the whole or any part of the premises, the tenant is discharged from the payment of the whole rent until the possession is restored." See also Taylor on Landlord and Tenant, (9th Ed.), secs. 378, 380; 2 Wood on Landlord and Tenant, p. 1096.

The general doctrine in such cases is that an actual or physical expulsion of the tenant is not necessary to constitute a breach of covenant for quiet enjoyment. Eviction may be actual or constructive, and any act of the lessor by which his tenant is deprived of the enjoyment of the whole or a material or substantial part of the demised premises, or which shows an intent on the lessor's part permanently to deprive or seriously to obstruct or interfere with the tenant's quiet or peaceful enjoyment, amounts in law to an eviction. McAdam Landlord and Tenant, (3d Ed.), sec. 403.

In *Graham v. Anderson,* 3 Harrington's Rep. (Del.), 364, the court said that eviction of a part would be an eviction of the whole premises. As applied to the case in hand, a substantial partial obstruction of the view would be a violation of the implied covenant of this lease. *Isabella G. M. Co. v. Glenn,* 37 Colo. 165, 86 Pac. 349. In *Edgerton v. Page,* 20 N. Y. 281, Grover, Justice, in delivering the opinion of the court, said, among other things, that when the lessor is guilty of acts that preclude the tenant from the beneficial enjoyment of the premises, in consequence of which the tenant abandons possession before the rent becomes due, the lessor's action for the recovery of rent is barred. In *Royce v. Guggenheim,* 106 Mass. 201, 202, 8 Am. Rep. 322, the court said: "Any act of a permanent character, done by the landlord, or by his procurement, with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or of a part thereof, to which he yields and abandons possession, may be treated as an eviction." See also *Symes Co. v. Wheelock,* 55 Colo. 459, 462, 464, 136 Pac. 65.

There is no important conflict in the evidence. The court in its opinion or finding says that there was a substantial interference with the defendant's rights but that the same was not in violation of any implied covenant in the lease. As shown by the excerpts from the court's opinion it is obvious that the court's conclusion, if such

was its conclusion, that there was no implied covenant
in the lease for quiet enjoyment was arrived at because
it would be incredible that the lessor intended to tie up
the entire property for ten years for the trifling sum
which he was to receive as rent from the Cusack company
for the use of the roof of the garage for advertising pur-
poses. This is apparent because the court said that if
the company had desired any such extraordinary conces-
sions, provision therefor should have been included in the
contract. The unreasonableness of this conclusion we
think is apparent from the fact that the lessor had ex-
pressly provided in the lease that he might terminate
it at any time by giving the lessee sixty days' written no-
tice, if he desired to wreck the garage and construct a
permanent building on the premises. However that may
be, the lessor is supposed to know the law of this state
that unless the contrary expressly appears in a written
instrument of leasing, there is always an implied covenant
of quiet enjoyment. If the trial judge intended to say
that the garage as built did not interfere with the open
and unobstructed view which pedestrians and occupants
of vehicles passing these premises would have of the ad-
vertising sign, we think he was mistaken. The filling
station is higher than the top of the advertising sign on
the roof of the garage. One-half the frontage of these
lots was occupied by the filling station and its equipment.
This was an obstruction of at least one-half of the entire
width of the lots. The lessee had the right to have a
free open unobstructed view of the entire premises, just
as it was when the lease was executed. The testimony
is undisputed by persons familiar with the business, and
the purpose for which the defendant leased these premises,
namely, for selling space to advertisers who wish to bring
their business to the attention of the traveling public, that
the filling station not only obstructed the view but made
the leased premises of no value whatever for the purpose
for which the defendant took the lease. We repeat that
the tenant had the right to the continuance of the same

conditions, so far as the view is concerned, and so far as concerns defendant's subsequent use of the premises, that existed at the time the lease was made. The lessor plaintiff cannot, by building upon the same lots a filling station, obstruct the view and collect the rent at the same time. The defendant was justified in treating the acts of the plaintiff as an eviction and in vacating the premises and in refusing to pay the rent.

The judgment cannot stand. As to whether the defendant may maintain its counterclaim for damages resulting from the eviction has not been argued, and we express no opinion concerning the same. It is, therefore, reversed and the cause remanded with instructions to set the same aside and if further proceedings are had they must be restricted to the issues raised by the counterclaim and the replication and be consistent with the views expressed in the opinion.