No. 13,296.

J. C. PENNEY COMPANY *v.* BIRRELL.

(32 P. [2d] 805)

Decided April 30, 1934.

Mr. BEN L. GARMAN, for plaintiff in error.

Messrs. COEN & SAUTER, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE parties appear here in the same order as in the trial court, and will be referred to as plaintiff and defendant.

The plaintiff was the lessee of certain storeroom premises in Haxtun, Colorado, and operated a merchandise business therein, under a lease dated July 31, 1929, and the defendant operated a grocery in the rear of same room occupied by plaintiff, and had so operated said grocery for several years before, when other parties occupied the front part of said room. Although it appeared that the grocery was operated as another department of the front main store, it in fact was operated independently. On November 22, 1929, at plaintiff's request, defendant signed a five year sub-lease on the rear part of the room—being a space approximately 24 feet by 64 feet—with all the appurtenances, rights, privileges and easements thereunto belonging or appertaining, for which defendant was to pay $65 per month. Shortly thereafter, plaintiff caused its construction-man to make

plans for a partition to separate the space leased to defendant, from the business of plaintiff, which had been theretofore separated by fixtures, with wire netting extending to the ceiling, with doorways between the two parts of the room or the two businesses. When a blue print of the partition plans was placed in the hands of a local contractor, defendant discovered that the plans provided for the closing up of the doorways, and on December 24, 1929, protested by letter to plaintiff, being defendant's Exhibit 3, saying therein that it was the "impression and satisfaction, that I had in mind, that the entrance would be left open when I signed the lease * * *," and objected on account of business reasons, and that his part of the room or store would be harder to heat, also that the toilet and lavatory accommodations would be cut off. The partition was constructed solidly, but a door was put in and used for about a month, when some new fixtures were put in plaintiff's store, and plaintiff closed the door leading into defendant's store, by placing the fixtures against the door. Defendant continued to protest and refused to pay rent. On May 5, 1930, plaintiff notified defendant that unless he paid rentals according to the provisions of the lease, that plaintiff would resort to its remedies under the "forfeiture for failure to pay rent" clause of the lease. Defendant thereafter paid rents under protest, as marked on the checks used in payment. Defendant then looked for other quarters, but found none available in the business section. He then bought a lot and told plaintiff's manager that he was going to put up his own building, which he did after some delay occasioned by building difficulties and weather conditions. This delay, caused by financing, building and weather difficulties, extended from March, 1930, to July 28, 1931. Rent was paid to May, 1931, but defendant refused payment of rent for June and July.

Plaintiff filed complaint for rentals due under the lease, made a part thereof, for four months, June, July,

August and September, 1931, and later filed a supplemental complaint for all rents accrued to May, 1932. Defendant answered, generally to the effect that plaintiff agreed that he could have the right of access through the door later closed by plaintiff; that the closing of the door caused such inconvenience and loss that he could not continue to operate his business, and that he considered the lease rescinded on account thereof, and as a cross-complaint alleged that the rental value of the premises on which he continued to pay rent under the protest had been reduced by half, and claimed a refund therefor; further alleged a loss of business and made a claim for such loss together with expenses connected with, and incident to, the moving. Trial was had to the court and findings entered in favor of defendant, except that he take nothing under his cross-complaint. Motion for a new trial was overruled and judgment entered.

■■ The case was tried upon the theory of constructive eviction. Plaintiff seeks a reversal by contending there was no eviction, and further that if it could be so considered, that defendant waived any right to claim an eviction by his failure to abandon within a reasonable time. What is a reasonable time, depends solely upon the facts peculiar to the case. The facts surrounding the latter claim were fully heard and considered by the court, and, being determined in defendant's favor upon sufficient evidence, will not be disturbed.

■■ The only question remaining is: Did the act of the plaintiff justify the abandonment of the lease by defendant? It is not disputed that defendant had enjoyed years of business in the rear of the room which had an opening or doorways into the main or front store. It is not disputed that it was an advantage to defendant to have his business so connected and adjacent to the other business, since a large part of his customers had entered through this doorway for eight years. That advantage was a part of, and an asset to, his enterprise. It is not contradicted that by the closing of this doorway, the only

remaining access to defendant's store was from a side street, on which there were no places of business, and this side entrance was 85 feet from the main street of the town. A rational person would not enter into a lease that would, by its terms, deprive him of the most valuable and substantial advantages of his established business location. The written lease is not so worded. The lease was prepared by plaintiff and is to be construed against it when, as here, it is silent as to any change in the condition of the premises from that in which they were then occupied and enjoyed by defendant. In the absence of anything to the contrary in the lease, or any oral agreement that should be made a part of an incomplete contract, the established use of this connecting doorway, was "a right, privilege and easement belonging" to the premises, which right was covenanted to defendant by the terms of the lease. The wrongful deprivation of that part of the leased premises by plaintiff amounts in law to an eviction.

The spontaneous action of defendant in immediately writing a protest to plaintiff, when he discovered from the blue print the proposed closing of the door, as shown by defendant's Exhibit 3, is most persuasive evidence that defendant entered into the written lease with the expectancy of enjoying benefits and privileges theretofore extended. This being true, he had the legal right to abandon the lease when he was deprived of the undisturbed possession and peaceable enjoyment covenanted to him by its terms. The questions involved in this case have been clearly settled by this court in *Cusack Company v. Pratt,* 78 Colo. 28, 239 Pac. 22, and *Frosh v. Sun Drug Co.,* 91 Colo. 440, 16 P. (2d) 428, and cases therein cited.

The judgment of the trial court was right and is affirmed.

Mr. Chief Justice Adams and Mr. Justice Burke concur.