637 P.2d 403 (1981)
ESKANOS AND SUPPERSTEIN, a partnership d/b/a Tower Plaza Shopping Center, Plaintiff-Appellant,
v.
Art IRWIN and Marion Irwin d/b/a Art's Photography, Defendants-Appellees.
No. 80CA0481.
Colorado Court of Appeals, Div. III.
November 5, 1981.
*404 Barash, LeHouillier & Walsh, Patric J. LeHouillier, Colorado Springs, for plaintiff-appellant.
No appearance for defendants-appellees.
SMITH, Judge.
Plaintiff initiated this action to recover unpaid rent based on defendants' allegedly unjustified abandonment of a commercial lease. Defendants counterclaimed for damages, alleging that they had been constructively evicted from the premises. After a trial to the court, plaintiff's complaint was dismissed and damages were awarded to defendants on their counterclaim. On this appeal, plaintiff contends that the trial court erred as a matter of law in concluding that there had been a constructive eviction. We disagree and affirm.
The following facts, essentially as found by the trial court, are supported by the evidence in the record. Plaintiff and defendants entered into an agreement in August 1978, which provided that defendants, who owned and operated a photographic studio, would lease premises in a shopping center owned by plaintiff. At the time of entering into the lease, defendants made known to Melvin Eskanos, one of the partners in the lessor partnership, their need for relative peace and quiet, and the lease contained a provision guaranteeing to defendants the quiet enjoyment of the premises.
The lease was for a two-year term beginning September 1, 1978. Rent was payable in monthly installments, and defendants paid from September 1978 through March 1979. They vacated the premises in the early morning hours of April 1, 1979.
Defendants vacated the premises after repeatedly complaining and after notifying plaintiff that they were considering doing so because the noise in the shopping center interfered with their business. This noise, all music, emanated from the adjacent premises of an adjoining tenanta restaurant that played operatic music, the premises of another adjoining tenanta dance studio located immediately below defendants' store, and a stereo system maintained by plaintiff-lessor in the shopping center. The restaurant and plaintiff's stereo system had been in the shopping center before defendants leased their premises; the dance studio began its operations approximately three months later.
The trial court found:
"All three music transmissions could be heard easily in the Defendants' studio, and on many occasions the opera music and the dance music were so loud as to disturb the Defendants in the occupancy of their premises and cause comment by Defendants' customers. Even assuming that no one of the three systems alone was sufficiently loud and distracting as to constitute a nuisance, all of them together resulted in such a cacophony as to make Defendants' occupation of their premises periodically unendurable."
Plaintiff's leases with both the restaurant and the dance studio contained provisions to the effect that devices used to transmit music to their customers "shall [not] be used in a manner so as to be heard or seen outside of the Demised Premises." Both leases also contained the following provision:
"Tenant shall ... not engage in any activities, or allow its employees or customers to engage in such activities, which, in Landlord's sole judgment reasonably exercised, create a disturbance or result in noise or noxious activity offensive to other tenants, to Landlord, or patrons of other tenants."
*405 The trial court found that defendants' complaints to Eskanos initially resulted in some effort to reduce the noise level, but that "no effective action was ever taken by plaintiff to enforce the restaurant and dance studio lease provisions relating to noise," and, further, that defendants' problems continued in March 1979 after plaintiff claimed to have solved the problem relative to the dance studio.
The trial court concluded that plaintiff's failure to take effective measures to eliminate or substantially reduce the noise from the adjoining tenants' premises under the provisions of its leases with them constituted a breach of its covenant with defendants for peaceable enjoyment of their premises and justified defendants' abandonment of the premises. Although it determined that plaintiff's failure to enforce the provisions of leases with the restaurant and dance studio constituted a constructive eviction, it also concluded that defendants failed to prove damages except as to the return of their $225 security deposit and one item of expenses in the amount of $58.
On this appeal, plaintiff does not challenge the trial court's determination that defendants were denied the peaceable enjoyment of their premises. It contends, however, that the court erred in concluding that there had been a constructive eviction because the noise that rendered defendants' premises uninhabitable was not attributable to plaintiff and because there was no showing of plaintiff's intent to evict defendants. We do not agree.
A constructive eviction of a lessee can occur when that lessee is denied the full use and enjoyment of his leasehold as a result of acts committed by an adjoining tenant renting from the same landlord, when the landlord knows of the latter's actions and does not stop or control them. Milheim v. Baxter, 46 Colo. 155, 103 P. 376 (1909); Lay v. Bennett, 4 Colo.App. 252, 35 P. 748 (1894). Thus, a constructive eviction can be found to have occured from a landlord's acts of omission.
As to the more difficult question of the landlord's intent, early cases do support the proposition that a constructive eviction could not be proved without a showing that the landlord, by his acts, intended to cause an eviction or deprivation of use. See Hyman v. Jockey Club Wine, Liquor & Cigar Co., 9 Colo.App. 299, 48 P. 671 (1897); Eisenhart v. Ordean, 3 Colo.App. 162, 32 P. 495 (1893).
This rule was modified in later cases to remove the intent requirement where the landlord committed acts which were unlawful. See Lay v. Bennett, supra. And, without affirmatively rejecting the "intent to cause an eviction" rule as to lawful acts, it appears that this requirement was eliminated sub silentio in Cusack v. Pratt, 78 Colo. 28, 239 P. 22 (1925). There, the lessor had constructed a filling station that blocked public view of his lessee's advertising sign. The Supreme Court held that the lessee was justified in treating the lessor's act as a constructive eviction. It re-stated the rule as follows:
"Eviction may be actual or constructive, and any act of the lessor by which his tenant is deprived of the enjoyment of the whole or a material or substantial part of the demised premises, or which shows an intent of the lessor's part permanently to deprive or seriously to obstruct or interfere with the tenant's quiet or peaceful enjoyment, amounts in law to an eviction." (emphasis supplied)
In light of the court's use of the disjunctive in this statement in Cusack, we conclude that the applicable rule now is that, in addition to conduct by a landlord showing an intent to evict, acts of a landlord which actually deprive the lessee of the enjoyment of the premises, albeit without an intent to evict, can be treated as a constructive eviction.
Our conclusion in this regard is buttressed by Radinsky v. Weaver, 170 Colo. 169, 460 P.2d 218 (1969), a case strikingly similar to the one at bar. There, lessees rented a single story structure for a printing plant. They had chosen the single story design because their business required a location free from vibrations, dust, and dirt.
*406 Despite their protests, lessor proceeded to construct a second story which totally disrupted the conduct of lessees' business. The court said:
"[s]uch was done without any consent, and with intent that a permanent second-story addition be added to the leased premises .... That Radinsky's actions were intentional is quite evident from the fact that he resumed construction in spite of Weavers' initial protests and upon dissolution of the restraining order." (emphasis supplied)
The court concluded that lessor's "unauthorized invasion of the leased premises" constituted a constructive eviction.
In both Radinsky and Cusack, the intent requirement of a constructive eviction was satisfied by a finding that lessor intended, not to cause an eviction, but to perform the acts of commission or omission which resulted in a deprivation of use. Therefore, we hold that to establish a constructive eviction a lessee need not prove his landlord's intent to work an eviction; rather he need only prove that the acts which deprive him of all or a substantial portion of his leasehold were intentional on the part of the landlord, be they acts of commission or of omission. Consequently, the trial court did not err in finding a constructive eviction, even though it did not address the issue of plaintiff's intent to evict.
Finally, plaintiff contends that defendants waived any right to claim an eviction by their failure to abandon the premises within a reasonable time. However, what constitutes a reasonable time is a factual determination. J. C. Penney Co. v. Birrell, 95 Colo. 59, 32 P.2d 805 (1934). Here, in denying plaintiff's motion for new trial, the trial court found that any delay in defendants' abandonment was the result of their "good-faith effort" to work out a solution to the noise problems with plaintiff and, hence, that the time was reasonable and defendants' right to claim an eviction was not waived. Since the trial court's findings of fact are based on evidence in the record, they are binding on review. See J. C. Penney Co. v. Birrell, supra.
Judgment affirmed.
ENOCH, C. J., and PIERCE, J., concur.