STREETER et al., impl. with PAUL *v.* THE MARSHALL SILVER MINING Co. et al.

1. Where the first of a series of pleas expressly designates for whom the counsel appear, the use of the words " the defendants " in the subsequent pleas designate the defendants named in the first plea, and cannot be held to be an appearance for a defendant served, but not named in the first plea.

2. Where there are several defendants, all served, but no appearance as to one, it is error to render final judgment against all without first entering judgment by default against the defendant not appearing.

3. An entire judgment against several defendants, if reversed as to one must be reversed as to all.

4. It is a fundamental rule that no damages will be allowed which are not the actual, natural and proximate result of the wrong committed.

*Appeal from District Court of Clear Creek County.*

DEBT upon an injunction bond, wherein the Marshall Silver Mining Company and others, the appellees, were plaintiffs, and Eli F. Streeter, Walter N. Webster, impleaded with Philip Paul, were defendants.    The declaration is in debt, in the usual form, on an injunction bond, in a case in which Walter N. Webster and Joseph Rist were complainants and the above-named appellees were defendants, in which injunction was granted to restrain the said appellees from working certain property on the Seneca and Cayuga lodes in the county of Clear Creek.

The breach assigned was, that the said suit was dismissed and the injunction was dissolved as having been wrongfully issued ; that by reason of the issuance of said injunction the appellees herein had suffered loss of profits in working the

property, and had been obliged to keep in their employ a large number of men, etc., and that the complainants in said injunction suit had failed to pay either the costs of the suit or the damages suffered by the appellees herein.

The pleadings, after the title, etc., begin : "And the said defendants, Walter N. Webster and Eli F. Streeter, by H. M. and W. Teller, their attorneys, come and defend the wrong and injury, when," etc. The subsequent pleas began as stated in the opinion. The defendants were all served.

The evidence, as appears by the record, was substantially as follows :

Solomon Robinson was sworn as a witness, on behalf of the plaintiff, and testified : "I know Compass and Square lode; was mining on the north wall of this lode in the fall of 1871; had been mining five or six months; we had a lease from the Marshall Silver Mining Company; we had possession of 250 feet south-west of the tunnel; we were working twelve men ; the lease run until the 1st of May, 1872 ; we were working these men when the injunction was served ; we had a good body of ore ; the ore was yielding from 600 to 900 ounces per ton, worth $1.10 per oz.; the crevice was from 1 to 6 inches in width ; the second class ore run from 150 to 300 ounces per ton, and was worth 85 cents per oz.; pay streak was from 8 inches to a foot wide ; two-thirds of the ore was second class ; we only made two classes of ore ; we took out, perhaps, a half a ton per day of both classes of ore, 333 pounds of the first class and 666 pounds of the second class ; we paid $3.50 per day to the men ; it cost us $42 per day to run the mine besides powder, candles, etc.; the difference between the amount received and the expenses would be the profits ; we paid the company on the lease one-third of the amount taken out ; we were stopped forty-five days by the injunction ; we had four men employed during that time in running a drift ; this drift was run to satisfy the court ; can't say we took out pay in the drift ; the twelve men all stopped work except the men in the drift ; I had orders from the Marshall

Silver Mining Company to keep the men; I don't know as I can tell the reason why the men were kept; Marshall ordered me to keep the men I had, and have it understood that they were on pay; it was necessary to keep the men because the mine was liable to be jumped; the injunction was dissolved about the 20th of January, 1872; we had not the opportunity under the lease to get all the ore we could have taken out if injunction had not been served.

On cross-examination witness testified: "We worked on the lease until the 1st of May; I think the working would average as I have stated; the cost of steel, powder, etc., would not be a great deal; the lease was to John Wycoff, Charles Sargent and myself; we sold the ore to the mill; something over one-half run 900 ozs.; I think the average of the first class would be $750 per ton; I think the average of the second class would be $250 per ton; had been working on the ore vein when stopped, about a month; had been working under the lease from about the 1st of October; F. J. Marshall was agent of the Marshall Silver Mining Company; he told me to keep the men, and I kept the most of them; I kept eight of them; four of them were in the drift the most of the time, the others were not doing any thing the most of the time; the drift was run on the Compass and Square lode; I hardly thought it was necessary to keep four men to keep the mine from being jumped; over one-half the men have been paid; I paid three of them; I paid them $90 each for wages that had accrued after the injunction was served; I worked in striking and blacksmithing for the four men; we had no other business; no person volunteered to employ us; I did not try to get work elsewhere; don't know whether Wycoff and Sargent were at work or not; I suppose they could have got work if they had wanted it."

The plaintiff then called F. J. Marshall who testified: "I am president of the Marshall Silver Mining Company, and was so in 1872; I gave directions when I was notified of the injunction to keep the men, but to stop work; I

received notice from my attorneys that injunction would be dissolved, and that was one reason why I kept the men; another reason was, I heard some hints that somebody would try to take possession by force. I know of expenses of Mr. Johnson, the surveyor, incurred in that case." The witness was here asked to state if it was necessary in the case to have survey and plat of the premises, and whether such survey and plat were made, to which the defendants by their counsel objected as being immaterial, but the objection was overruled, and the defendants excepted. The witness answered: "I regarded it necessary, and the survey and plat was made." The witness was then asked: "What did you pay Mr. Johnson for that survey?" To which question the defendant objected as being incompetent, and that what they paid would be no measure of damages in this action upon the bond, and if paid it was an expense not covered by the bond; but the court overruling the objection, the defendants excepted. The witness thereupon answered: "To the best of my recollection $90, and his services were worth what we paid. I had some other expenses in going back and forth to Central and in looking up the witnesses." The witness was here asked to state, if he could, how much money he had expended in procuring witnesses in support of his motion to dissolve the injunction, to which the defendants objected; but the court overruling the objection, the defendants excepted, and the witness answered: "I am satisfied it was not less than $100; this $100 was spent in employing a man to look up the witnesses."

The plaintiffs thereupon rested their case.

The defendants thereupon called the witness Robinson, who testified: "We worked under the lease till May 1st, when it expired." The witness was then asked: "Did you or did you and your co-lessees after the 1st of May, 1872, take a new lease of this same property on the Square and Compass lode?" To which the plaintiffs objected, and the court sustaining said objection, the defendants excepted. The defendants then offered to show by this witness that

he, the witness, took a new lease from the 1st of May, 1872, upon the same terms as the former lease and of the same ground, and worked the same till the ore was worked out. To the reception of which the plaintiffs objected, and the court sustaining the objection, the evidence was not received, and the defendants excepted. Witness then proceeded: "I did not work out all the ground that would pay to work by the 1st of May, 1872; we had worked out on the 1st day of May about one-half the ground we found would pay to work; we had a pocket of ore 50 or 60 feet long; I judge we took out in the neighborhood of 100 tons of ore."

Defendants then introduced as a witness Walter N. Webster, who testified : "I know Charles Sargent ; I had a conversation with him one week ago to-day about the amount of ore Robinson, Wycoff and Sargent were taking out of the Compass and Square lode when they were enjoined."

The witness was asked : "What was said about it by Mr. Sargent?" To which question the plaintiffs objected, "that it was since assignment to plaintiff and was incompetent," and the court sustained the objection, and the defendants excepted.

The jury returned a verdict in favor of the plaintiffs, a motion for a new trial was interposed and overruled, and judgment entered on the verdict in the sum of $5,000 debt, and $1,440 damages.

Messrs. H. M. & W. TELLER, for appellants.

Mr. HUGH BUTLER, for appellees.

ELBERT, J.    There was no appearance in the court below by the defendant Paul.

Where counsel, in the first of a series of pleas filed, expressly designate the defendants for whom they appear, the use of the words "the said defendants" or "the defendants" in the subsequent pleas designate the defendants named in the first plea and cannot fairly be held to be an appearance for a defendant served but not named in the

first plea. *Gargan et al.* v. *School District No.* 15 (*ante,* p. 53), and cases there cited. There being no appearance by the defendant Paul, it was error to enter final judgment against all the defendants, without first entering judgment of default against him. *Good* v. *Martin,* 1 Col. 406. An entire judgment against several defendants must be reversed as to all. It cannot be reversed as to one and affirmed as to the others. *Gargan et al.* v. *School District No.* 15, *supra.* In view of another trial it is perhaps well to notice some of the questions raised by the instructions and argued by counsel.

The defendant asked and the court refused to give the following instruction : " That the money alleged to have been paid for the expenses of men to watch or hold the mine against other than the defendants in this case cannot be allowed in this case, and it is not a legitimate item of the damages covered by the bond sued on."

The refusal to give this was error, and in contravention of the fundamental rule that no damages will be allowed which are not the actual, natural and proximate result of the wrong committed.

Another instruction asked and refused is as follows :

" That if they believe, from the evidence, that the Marshall Silver Mining Company, one of the plaintiffs, was the owner of Compass and Square lode ; and that at time of service of writ of injunction referred to in bond upon which suit was brought, it had leased the same to Robinson, Wycoff & Sargent, and by the terms of such lease were to have one-third the proceeds of the ore taken out of the property so leased, then defendants in this case are not liable to the company or to any or all of these plaintiffs for the amount of such one-third, even, although the said lessees were prohibited by the injunction from working said property, unless it has been shown that said company, in consequence of the issuance of said writ of injunction, lost said one-third or some portion of it, or was unable to lease said property on the same terms, and that if the ore remained in the mine, in the absence of proof that the company could not lease the said

mine, and procure the ore to be taken out on the same terms as in the former lease, the said company cannot be held to have suffered any damage, by reason of the failure of lessees to take out such ore, and the jury should allow no damages to the said company on account of said injunction."

This instruction is not free from objection.

The premises do not warrant the broad conclusion that "the jury should allow no damages to the company on account of the injunction;" nor is the right to recover the value of the one-third of the proceeds at all dependent on the ability or inability of the company to lease its mine on the same terms. But in so far as it excludes the value of the one-third of the product of the mine going to the company under the terms of the lease, from the damages recoverable by the plaintiffs, it is correct. The company did not, by reason of the injunction, lose its ores, but their production for forty-five days under the terms of the lease. There was no loss of property; there may have been a loss of profits. If, for instance, the company was compelled to pay higher rates than under the terms of the lease for mining the same ores, there was a loss of profits in this respect to the extent of the increased cost, which was the legitimate subject of recovery. So, too, a loss of profits arising from loss of the use of the product or its value would afford ground of compensation."

Another instruction refused by the court is as follows:

"That plaintiffs in this case cannot recover of defendants herein any damages on account of any loss of profits alleged to have accrued to Robinson, Sargent & Wycoff, or either of them, growing out of the said lease testified to by Robinson, unless said plaintiffs have shown by the evidence that said parties were, by the delay and stoppage of the work under said lease, occasioned by the issuance of the writ of injunction, actually deprived of such profits, and that they were unable to procure a new lease upon the same terms as the first one, upon which to work the ground so leased by them."

This instruction was properly refused. Robinson, Sargent & Wycoff were lessees, and were entitled to recover the value of the lost period of their lease. without reference to their ability to make a new lease on the same terms.

It is not intended here to lay down a rule covering all the damages recoverable on the bond, but simply the rule upon the points indicated.

The right of the obligees in this bond to maintain a joint action thereon is not called in question, and we are not to be regarded as deciding the question by implication. The judgment of the court below is reversed and the cause remanded for further proceedings according to law.

*Reversed.*