CLIFFORD V. THE DENVER, SOUTH PARK & PACIFIC
RAILROAD.

1. In actions by employees for injuries arising from the negligence of the employer, such injuries must be the actual, natural and proximate result of the wrong committed, the legitimate sequence of the thing amiss.
2. The injury need not be anticipated in the particular case; it is sufficient if such an injury might be reasonably expected to result in the long run from a series of similar negligences.
3. A complaint averring that the injury resulted from sleeping several consecutive nights at the summit of the Alpine Pass, where snow storms prevailed almost continuously, on wet and frozen ground, with nothing but damp spruce branches for a bed and insufficient covering, held sufficient in the foregoing respects.

*Error to District Court of Arapahoe County.*

PLAINTIFF was hired as a day-laborer on the construction of defendant's road. His contract provided that defendant should furnish him with "good and suitable board and lodging." The amended complaint contains the following among other averments:

"That some time after plaintiff commenced said work the camp of defendant, which was constructed by said defendant for the purpose of boarding and lodging plaintiff, and the force of hands employed by defendant company in building said wagon road, was moved further westward by said defendant, and further into the mountains on the line of said road, and to a great altitude, where the weather was cold and damp, and where plaintiff, and the whole force of hands and laborers with him,

were greatly exposed, and their health greatly endangered from said exposure; and plaintiff charges and alleges that the defendant company, through its officers, agents and managers aforesaid, wholly neglected and refused to furnish proper shelter or houses, cabins or tents, or the necessary blankets or bedding, to protect plaintiff, and others with him, from the cold, damp and inclement weather of said mountains and said altitude, and especially failed and neglected to provide comfortable beds and bedding to protect plaintiff and his co-employees of nights from cold, damp weather, and from the snows and cold rains then prevailing in said mountains and at said camp.

"That plaintiff and his co-employees, immediately and without delay, protested against such treatment to the said agents and officers and managers of defendant company, and notified them that plaintiff and his co-employees would at once quit work and abandon said employment unless they were immediately, or as soon as possible, furnished with comfortable lodging and protection from such weather, and proper beds and bedding to keep them warm and comfortable at night; and that said officers, agents and managers of the said defendant then and there agreed with plaintiff and his co-employees that if they would not leave and abandon said work, but remain at the same, that defendant, through its said officers, managers and agents, would provide suitable and comfortable lodging and bedding and blankets for them, and that said officers, managers and agents so promised and assured plaintiff and his co-employees, from day to day, for several days; and that plaintiff, relying on such promises and assurances, and believing that the same would be complied with by defendant, did remain in the employment of defendant, as aforesaid, and that during such time, and while plaintiff was relying on such promises and assurances of said defendant, and for two or three consecutive nights, plaintiff was compelled to sleep

on the cold, wet and frozen ground, without anything under him except damp branches of pine or spruce trees, and without sufficient blankets or bedclothes to cover him and protect him from the cold, whereby plaintiff was taken dangerously sick from such exposure, and became wholly paralyzed in his whole body, and in all of his limbs, and became wholly unconscious, and so remained for several months, whereby his whole health was permanently ruined and destroyed for life, and his constitution shattered and so broken down that he has never recovered from the same, and never will.

"The plaintiff received all of said injuries, and has endured all of said sufferings, through the carelessness, neglect, and want of proper care and diligence on the part of said defendant, through its duly-appointed and authorized officers, agents, and managers, as aforesaid, in not exercising due and proper precaution, and in violating their said promises and assurances aforesaid, in regard to furnishing the said plaintiff and his co-employees with proper lodging and beds and bedding to protect him and them from the exposure aforesaid; and plaintiff states that he could not, by any degree of care and diligence on his part, have prevented said exposure and subsequent sickness and suffering, and would have left said employment if he could have done so, and returned back to a settlement or place of shelter immediately; and but for the said promises and assurances of said defendant that proper protection should be furnished without delay.

"That said defendant wrongfully and carelessly moved plaintiff and other laborers from the first camp on the line of said road to the summit of said mountains, on the Alpine Pass, a point of great altitude, and where snowstorms prevailed almost continually, and where, at best, the exposure was very great, and where the health and lives of said men and employees were continually exposed to great danger; and the said officers, agents and

managers of defendant company well knew this, but wholly failed, neglected and refused to prepare such suitable and proper cabins, tents, and bunks and bedding for said new camp, and for the protection of plaintiff and others, before moving into said new camp, which was from twenty-five to thirty miles ahead of the first camp; and that plaintiff did not know of such gross neglect and carelessness until he reached said new camp, at the said Alpine Pass, at the summit of said mountains, and was compelled to submit to such exposure for a time, or incur still greater dangers by attempting to return to a settlement or place of shelter; and plaintiff states that it was during the time he was thus compelled to submit to such exposure, as aforesaid, that he was injured in his health, as aforesaid, by the wrong and negligence above alleged."

Demurrer by the defendant, which the court sustained. Plaintiff electing to stand by his complaint, judgment was duly entered dismissing his action. To reverse this judgment the present writ of error was sued out.

Mr. H. B. JOHNSON, for plaintiff in error.

Messrs. TELLER and ORAHOOD, for defendant in error.

HELM, J. To sustain the judgment of the district court, counsel for defendant in error urge a single proposition, viz., that the amended complaint does not state facts sufficient to constitute a cause of action. The wording of this complaint might have been better, but we do not deem it fatally obnoxious to the foregoing objection. The action is based upon defendant's negligence, and the rules of pleading applicable did not require a statement of the exact number, quality, weight, and condition of the blankets or other covering provided. The averment that plaintiff "was compelled to sleep on the cold, wet and frozen ground, without anything under him except damp branches of pine or spruce trees, and without sufficient

blankets or bedclothes to cover him, and protect him from the cold, whereby plaintiff was taken dangerously sick from such exposure, * * *" is, in our judgment, the allegation of a material ultimate fact. It is considerably strengthened by other averments of the complaint. But, from the language of this allegation alone, it appears that no bunk or bed *of any kind* was furnished; while under that part of it which relates to covering, evidence of such primary facts as the number and quality of the blankets provided would be admissible.

It was not necessary to allege plaintiff's want of knowledge concerning the kind of weather he encountered at the time of contracting the illness. Under the circumstances disclosed, this became an immaterial matter. There was here no acquiescence in the alleged wrongful omission. When plaintiff reached the camp on Alpine Pass, he, of course, became aware of the condition of the weather. He then, also, for the first time, learned the character of the accommodations furnished. But the complaint shows that immediately upon obtaining this information, he protested, and would have quit work, had not defendant promised to have the supply of beds and bedding at once made sufficient. There was thus a clear admission by defendant that the provision made in this direction was inadequate. But notwithstanding this admission, and defendant's duty in the premises, the promise which induced plaintiff to remain was not kept, nor was anything else done to increase his protection from the dangers naturally incident to the exposure.

But it is asserted that the damages or injuries referred to in the complaint are too remote. We accept the rule on this subject as stated by the authorities cited. The damages suffered must be "the actual, natural and approximate result of the wrong committed." *Streeter v. Marshall,* 4 Colo. 535. "They must be the legitimate sequence of the thing amiss." Cooley, Torts, 68.

That sickness and paralysis may actually, naturally

and proximately result, and be a legitimate sequence, from sleeping several consecutive nights at the summit of. Alpine Pass, where "snow-storms prevailed almost continuously," on wet and frozen ground, with nothing but damp pine or spruce branches for a bed, and insufficient blankets or other covering, seems to be a reasonable proposition. We certainly cannot, purely as a matter of law, hold the contrary.

Counsel's suggestion that people frequently incur such exposure, and that neither these nor any other serious consequences follow, may be correct. But this fact, if it be a fact, is far from decisive as to the question of liability in cases like the one at bar. The principle above stated does not declare that the damage or injury *must* have resulted, or even that it must have been anticipated, in the particular case under consideration. On the contrary, it has been well said "that the consequences of negligence are almost invariably surprises." The expression "reasonable expectation," frequently used in this connection, is said to mean "an expectation that some such disaster as that under investigation will occur *on the long run* from a series of such negligences as those with which the defendant is charged." Whart. Neg. §§ 77, 78, and cases cited.

The foregoing suggestions answer all of the points specifically made in argument against the complaint by counsel for defendant in error, and we discover no other objection thereto which is fatal. The judgment of the district court is accordingly reversed, and the cause remanded.

*Reversed.*