THOMAS KING *vs.* INTERSTATE CONSOLIDATED R. R. CO.

JOHN MORRISON *vs.* INTERSTATE CONSOLIDATED R. R. CO.

PROVIDENCE—FEBRUARY 12, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Street Railways. Master and Servant. Negligence. Assumed Risks.*
A servant employed to remove snow from railroad tracks in open country,

remote from dwellings, assumes the risk that his hands or feet may be injured by freezing as incidental to his employment.

(2) *Master and Servant. Negligence. Street Railways.*

In the absence of custom, understanding, or agreement to that effect, it is not the duty of an employer to carry his employees to or from their place of work.

TRESPASS ON THE CASE for negligence on facts set forth in the opinion. Heard on demurrers to declarations, and demurrers sustained.

TILLINGHAST, J. These cases, which are substantially alike, are before us on demurrers to the declarations. We will consider the first-named case. It is trespass on the case for negligence, and sets out in substance, in the first count thereof, that the plaintiff was employed by the defendant corporation to help remove snow from its railroad tracks between Pawtucket, R. I., and Attleboro, Mass., in very cold weather in the month of February, 1899 ; that the work had to be done over a wide tract of open country, remote from dwelling-houses and other habitations ; that the defendant knew that the work of removing said snow and ice from its tracks and road-bed in said open country, in view of the cold and stormy weather, was very trying, exhausting, and dangerous to the laborers engaged therein, and that it was the duty of the defendant corporation to furnish sufficient food and shelter to the plaintiff during the continuance of said work and to provide for the safety of the plaintiff while so employed, and to carry him to his home in Pawtucket when returning from said work ; that he was ignorant of the danger attending said work in the open country in cold and stormy weather, and that while engaged for twenty-four hours therein, and while in the exercise of due care and in ignorance of the peril to which he was exposed, both of his feet were frozen, of which fact he informed the defendant's agents and servants, and requested them to carry him to his home in Pawtucket, but that the defendant, its agents and servants well knowing the premises, carelessly and negligently failed to provide food and shelter for the plaintiff ; and that the freez-

ing of his feet was due to the failure of the defendant corpo-ration, its servants and agents, to supply him with food and shelter while so engaged. It is further alleged that in consequence of the freezing of plaintiff's feet they had to be amputated, whereby he was disabled, etc.

The second count differs from the first in that it alleges that without fault on his part both of his feet were frozen, of which fact he informed the defendant, its agents and servants, and requested them to carry him to his home in Pawtucket, which they carelessly and negligently refused to do ; and, being unable to procure passage to his home, he was obliged to make his way there on his hands and knees, and was engaged in making said journey from seven o'clock in the evening until eight o'clock the next morning. And he avers that in consequence thereof, and without fault on his part, his feet were so badly frozen that they afterwards had to be amputated ; and that it was the duty of the defendant, under the circumstances set forth, to provide him with food, and shelter, and transportation, as aforesaid.

To this declaration the defendant demurs on the grounds, (1) that the defendant owed no legal duty to the plaintiff in the premises ; (2) that the alleged negligence was not the proximate cause of the accident ; (3) that the danger complained of was obvious to the plaintiff, and that he assumed it as one of the risks of his employment ; (4) that the plaintiff was not in the exercise of due care ; and (5) that it does not appear from the declaration that the defendant was guilty of negligence.

(1)    That, as a general proposition, a railroad company is under no legal obligation to provide food and shelter for its servants may be regarded as not open to question. No such duty arises from the ordinary relation of master and servant, and hence the mere fact that the plaintiff alleges the existence of such a duty does not sustain or aid the pleading, it being well settled that such an allegation, being one of mere matter of law, is useless where the declaration is insufficient, and superfluous when sufficient without it.    *Brown* v. *Mallett*, 5 C. B. 598 ; *Marvin Safe Co.* v. *Ward*, 46 N. J. 19.    In other

words, there must be an allegation of facts sufficient to create the duty or obligation, or else the declaration will be fatally defective.    *Nickerson* v. *Hydraulic Co.*, 46 Conn. 24.

No such duty as that alleged, then, being ordinarily devolved upon the master, we need only inquire whether the facts set out in the declaration bring the case within any exception to the general rule.    We do not think they do.    The case is no different upon principle from one where a farmer employs a woodchopper to go with him in very cold weather into the woods to chop down trees, haul logs or timber, or do other outdoor work at quite a distance from the home of the servant.    In connection with such employment the employee is supposed to look out for himself, in so far as the provisions for his physical wants are concerned ; and to protect himself from the cold and inclement weather, which is a danger inherent to the work, as best he may ;   and it is well settled that no legal duty devolves upon the employer in regard to such matters. It is of course competent for the person seeking employment to accept or reject that which is offered, but if he accepts it, it is the almost universal rule that he assumes the ordinary risks incident thereto.    That one of the risks incident to long-continued outdoor employment in the winter time, in this climate, is that one's feet or hands may be injured by freezing, is so clearly within the rule of assumed risks on the part of the servant as to require no argument.

Take the case of a teamster whose route, as is frequently the case, passes through a large tract of uninhabited country. He starts out in cold and stormy weather, and during his journey his feet become frozen, or he is blockaded by a snow-storm, on account of which he suffers from hunger, fatigue, and cold, to the extent of causing him serious physical injury.    Could it be claimed for a moment that his employer could be called upon to compensate him for the damages thus sustained ? Clearly not.    The danger or risk involved in such a case would clearly be incidental to the employment, and by accepting the employment he assumes the risk.

Again, take the case of an ice-dealer who employs men to go with him into the open country, several miles from their

homes, it may be, in very cold weather, to engage in cutting and storing ice. Not having taken proper precautions to protect themselves from the cold, or not being vigorous enough to endure the strain which is put upon them by the severity of the weather and the character of the work, they suffer from freezing or from exhaustion, and are thereby made sick and caused to suffer damage. Could it be claimed that their employer would be liable for the damages thus sustained? That this question must be answered in the negative would seem to be apparent to anyone who is familiar with the elementary principles of the law of master and servant. The furnishing of food and clothing, the proper care of one's self in the doing of his work, the recognition of the existence of well known physical laws—these duties, in the absence of some custom, rule, or understanding to the contrary, are clearly devolved upon the servant; and for any failure to observe them he alone must suffer the consequences.

As said by the court in *Yazoo Transportation Co.* v. *Smith,* 28 So. Rep. 807: "The laborer must be presumed to have knowledge equal, if not superior, to his employer's, of the effect of cold upon his feelings and person. His own temperament is better known to him than to anyone else, and his own sensations sound the alarm to himself. Men are presumed to have ordinary common sense until the contrary is shown, and the law does not speculate on degrees of knowledge about weather." See also *Kelley* v. *Silver Spring Co.,* 12 R. I. 112; *Gaffney* v. *R'y. Co.,* 15 R. I. 456; *Baumler* v. *Brewing Co.,* 23 R. I. 430.

Of course it is competent for a servant to stipulate as to duties which the master shall perform in addition to those which the mere contract relation imposes upon him, and in such case the terms of the contract would govern as to such additional duties. But in the absence of such stipulation or of some conduct on the part of the master from which the additional duty may be impliedly assumed, his common-law obligations only are binding upon him.

In order, therefore, to cast such a duty upon the defendant in this case as that which is here relied upon, it must appear

from the facts and circumstances set forth in the declaration, that the plaintiff was led to neglect or omit to provide for himself, by reason of the fact that the defendant had assumed the duty of providing for him. But no promise of this sort on the part of defendant is set out in the declaration, nor is it alleged that the defendant in any way assumed upon itself the duty of providing the plaintiff with food and shelter. It necessarily follows, therefore, that the only legal duties which devolved upon the defendant were those which grew out of the contract relation, as aforesaid.

Had the plaintiff alleged in his declaration that in view of the facts and circumstances set out as to the weather, the danger, etc., the defendant assumed upon itself the duty of feeding the plaintiff, of protecting him from injury on account of the cold, and conveying him to his home in case of his becoming exhausted, or when his work was done, the case might come within that of *Bresnahan* v. *Lonsdale Co.*, Dem. 340, decided January 17, 1900, where it was held that the declaration stated a cause of action, in that it alleged that the defendant undertook to convey the plaintiff's intestate, after his injury, to his home, and neglected to take the proper precautions to cover and protect him while so doing, in consequence of which exposure, complications ensued causing his death. The court said that "If the taking home of the plaintiff's intestate after his injury, was a duty assumed by the defendant corporation, the fellow-servant doctrine contended for by the defendant does not apply."

*Hyatt* v. *Hannibal R. R. Co.*, 19 Mo. App. 287, is to the same effect. In that case the plaintiff and others were hired to shovel snow from the defendant's tracks. The weather became intensely cold, and it began to snow. Under these circumstances plaintiff hesitated about going forward; but defendant's superintendent promised him that if he would continue he would keep cars near the gang in which they might warm themselves. Relying on this inducement, the plaintiff proceeded with the work. An engine was left, but the engineer refused to let the plaintiff get in to warm himself, and his foot became frozen from the exposure. The

court said : "What difference can there be in an assurance against danger from defects in machinery, and against danger from being extraordinarily exposed to the rigor of extraordinary weather ? If, as was said, the master cannot prevent the severity of the weather, he can very well provide against it. Neither can the master prevent the breaking of the machinery or apprehend accidents in many cases, but he may well provide against injury therefrom, even though the machinery does break or the accident happen. He may provide means of escape, or otherwise protect his servants. Notwithstanding the defendant might not have been liable in this case, if he had not promised to provide protection from the extraordinary weather; notwithstanding that from the simple employment of plaintiff without more, it might not have been the duty of the defendant to provide fires, yet, when the assurances were given and the plaintiff was induced thereby to undertake the extraordinary work, it became the *duty* of the defendant to protect him in the manner assured."

In *Clifford* v. *Denver Ry. Co.*, 9 Colo. 333, the plaintiff was hired as a day laborer in connection with the construction of the defendant's road. His contract provided that the defendant should furnish him with "good and suitable board and lodging."

At first the plaintiff worked in a low altitude. When he reached the camp, high up in the mountains, and found that he must sleep on damp spruce boughs, with insufficient covering, he protested, and, with his fellows, threatened to quit work unless they were immediately furnished with comfortable lodgings and protection from such weather, and proper beds and bedding to keep them warm at night. Thereupon the defendant agreed with the plaintiff and his co-employees, that if they would not leave the work, but would remain at the same, the defendant, through its officers and managers, would provide them with suitable and comfortable bedding, etc. These promises were several times repeated, and the plaintiff, relying upon their being fulfilled, remained in the employ of the defendant, and shortly afterwards, by reason of being compelled to sleep on the cold, wet, and frozen

ground and without sufficient blankets to cover him and protect him from the cold, was taken dangerously ill and his health was permanently ruined and destroyed. It was held by the court that the plaintiff could recover.

So long, therefore, as said first count fails to allege that the defendant corporation either expressly or impliedly assumed the duty of furnishing the plaintiff with food or protection from the cold, we think the demurrer thereto must be sustained.

(2) We think the second count is also demurrable. It is not alleged that the defendant corporation conveyed the plaintiff to his place of work, or that it promised either expressly or impliedly to carry him back to his home, and it is not and could not successfully be contended that it is any part of the duty of an employer to carry his employees to or from their place of work in the absence, at any rate, of some custom, understanding, or agreement to that effect.

In *Ionnone* v. *The Ry. Co.*, 21 R. I. 452, Matteson, C. J., in delivering the opinion of the court, said: "The carrying of the deceased after his day's work was done to a point near his home is, we think, to be regarded not as creating the relation of a passenger, but rather as a privilege incidental to his contract of service granted to him by the defendant, of which he availed himself to facilitate his return to his home and that it was a privilege accorded to him merely by reason of his contract of service."

*Schumaker* v. *St. Paul & Duluth R'y. Co.*, 46 Minn. 39, cited by plaintiff's counsel in support of this count, while at first blush it would seem to sustain the same, yet upon more careful study we think it is distinguishable from the case at bar. There the plaintiff was sent to repair a wrecked caboose on the line of the defendant's road. It was extremely cold, and a village nine miles away was the nearest point at which he could get food and shelter. He was not provided with food or sufficient clothing for exposure to such weather. The company knew this, and knew that he relied upon its sending for him in the evening. It did not do so, and he was obliged to walk back to the village; and by reason of his exposure to

the extreme cold he contracted rheumatism and was permanently injured. The court held that he was entitled to recover. The case was different from the one now before us in this : That it was evidently alleged in the declaration—although the declaration is not set out in the case—that the defendant knew of the plaintiff's unprepared condition as to clothing, etc., and also knew that he relied on the defendant's furnishing him with transportation when the work was completed. Whether in case the declaration now before us showed such a state of facts we should follow that case and sustain it, we are not now called upon to decide.

That the defendant's conduct towards the plaintiff in refusing to carry him home after his feet were frozen was highly reprehensible, morally speaking, no one will question. Indeed, it is well-nigh inconceivable that the agents and servants of the defendant corporation could have been guilty of so gross an act of inhumanity. But courts of law can only take notice of legal rights, duties, and obligations, and must decide cases in accordance therewith, regardless of humanitarian questions.

The demurrer to the second count is sustained.

As the declaration in the second named case, namely—*John Morrison* v. *Interstate Consolidated St. R'y. Co.*, is the same as the one we have already considered, the demurrer thereto is also sustained, and the cases are remanded to the Common Pleas Division for further proceedings.

*James M. Gillrain and T. P. Corcoran*, for plaintiff.
*W. B. Vincent*, for defendants.