[No. 5903.]

### THE CENTRAL BUSINESS COLLEGE COMPANY v. RUTHERFORD.

**Landlord and Tenant—Eviction—**The lease of a public hall provided that the lessee should "at all times conduct the place as a respectable dancing academy, and not tolerate therein improper or disreputable characters." The defendant having rented the hall to a colored club for a festive occasion, the landlord locked the doors and excluded the colored people, upon the false pretense that, in occupying the hall upon a former occasion, they were under the influence of liquor, and had conducted themselves improperly, but in fact on the sole ground of their color. The tenant was held entitled to treat this as an eviction, and having given notice to this effect at once, and abandoned the premises, the landlord's action for rent was barred.—(280)

The landlord may not repel the tenant's claim of an eviction by invoking his own contrary purpose.—(280)

*Error to Denver District Court*—Hon. JOHN I. MULLINS, Judge.

Messrs. DOWD & FOWLER, for plaintiff in error.

Mr. J. C. MURRAY, and Mr. EDWIN H. PARK, for defendant in error.

Mr. Justice Campbell delivered the opinion of the court:

This is an action by the lessor, a corporation, to recover rent due from the lessee Rutherford on a written lease of Arion Hall in the Enterprise building, Denver. Defendant bank has no interest in the controversy, being a mere custodian of a certificate of deposit of another bank, which it holds, as trustee, for the benefit of the prevailing real party in interest. Upon the trial, without a jury, plaintiff was nonsuited at the close of its case and is here with its writ of error. The sole question for decision is whether the lessee, defendant, was evicted from the premises. If he was, plaintiff lessor was properly nonsuited; if not, the judgment was wrong. Plaintiff itself was a lessee of the owner of the building, and Rutherford, under the sub-lease, had the use of the hall for the purposes of a dancing academy and ball room. The sub-lease provided that the lessee "will at all times conduct the place as a respectable dancing academy and ball room, and will not allow or tolerate therein improper or disreputable characters or persons under the influence of liquor." The lessee Rutherford, as he might, rented the hall to a dancing club composed of colored people for the evenings of December 25, 1903, and January 1, 1904, Both the owner and his lessee, plaintiff here, objected absolutely to the use of the hall by colored people and plaintiff's president so informed defendant Rutherford. Notwithstanding this objection and their remonstrance, the colored club were permitted to occupy the hall on Christmas night for a dance. When its members attempted to gain entrance into the hall on New Year's night, they found the doors to the same locked and were not permitted to enter.

The door was locked by order of plaintiff's president. It seeks to justify this course because, as it says, on Christmas night some of the members of this club, while using the hall, were under the influence of liquor and conducted themselves in an improper manner, and thus brought disrepute upon the hall, which constituted a breach of the lease.

The trial court was right in finding against plaintiff on this issue. There is no legitimate evidence that the members of this club were improper or disreputable characters, or were disorderly, or under the influence of liquor, when they occupied this hall Christmas night.

The trial court was also justified in finding that the real objection by plaintiff to the use of the hall by this club, and the real reason for locking the doors and excluding its members, was because they were negroes, not that they were disorderly or drunk. The fact that they are negroes does not of itself make them disreputable. The court was justified in finding from the evidence on this point, which is largely hearsay in plaintiff's behalf, that their behaviour was circumspect and entirely proper. In the lease, under which Rutherford entered, there was no clause that prevented him from letting the hall to colored people. The mere fact that he rented it to those of that race, or that they were objectionable to the lessor, affords no legal justification or excuse for locking the hall and excluding them. If the owner of the building, or his immediate lessor, the plaintiff in this case, did not wish to have the hall occupied as a ball room or a dancing academy by colored people, a provision in the several leases to that effect should have been inserted. They did not so protect themselves and cannot justify their conduct in interfering with the possession of the premises by defendant, a

sub-lessee, because he rented the hall to negroes who were reputable and orderly and conducted themselves in a proper manner.

It is not exclusively for plaintiff, as it contends, to determine whether or not it intended its act as an eviction. If the lessor's intention is the criterion, it might be difficult, if not impossible, to establish an eviction in any case where it was for his interest to deny that it occurred. We think that this act of plaintiff lessor in locking the hall, and preventing the use of it by reputable and orderly persons to whom defendant lessee had rented it for the evening of January 1st, being treated, as it was, by the defendant as an eviction, was so in law. Rutherford regarded this action on the part of his lessor as an eviction, and at once gave notice to that effect, and has not since that time occupied or used the hall under the lease. Our conclusion is sustained by at least two decisions of this court and one in the court of appeals.—*Hyman v. Jockey Club Co.*, 9 Col. App. 299; *Isabella Gold Mining Co. v. Glenn*, 37 Colo. 165; *Milheim v. Baxter*, 46 Colo. 155, 103 Pac. 376. In the *Glenn case* it was said: "An eviction may be actual or constructive, and any act of the lessor by which his tenant is deprived of the enjoyment of the whole, or a material part, of the demised premises, or which shows an intent upon the part of the lessor permanently to deprive, or seriously to obstruct or interfere with, the tenant's quiet and peaceable enjoyment thereof, amounts in law to an eviction." Certainly the action of the lessor, in the case at bar, in taking possession of this hall and locking the doors and preventing defendant lessee from using every portion of it on the night of January 1st, showed an intent upon its part permanently to deprive, and

seriously to obstruct and interfere with, its lessee's quiet and peaceable enjoyment of the hall, so long as he rented it, as he had a right to do, to a club composed of reputable and orderly colored people. In the absence of a reservation of such right, in the lease, it was not for this lessor to dictate to defendant lessee, or to control him in the matter of the selection of persons who should use the hall as a dancing academy, so long as they were reputable in character and orderly in their conduct. Defendant had a right to make his selection of dancers, and this right was seriously obstructed and interfered with. Plaintiff lessor expressly says that it would not permit or tolerate the use of the hall by negroes because its landlord, the owner, objected and threatened to cancel its own lease if such use was continued. In the *Milheim case* it was said: "Any act wilfully done by a landlord which justifies the tenant vacating the leased premises, and he vacates them on this account, amounts to, and may be treated as, an eviction." It was also stated "When the lessor, by an illegal act, materially disturbs the possession of his tenant, which he should protect and defend, the latter may abandon the premises leased." Certainly under these decisions, which are in harmony with the holdings generally in this country, the act of the lessor justified the lessee in vacating the premises, which he did. It amounts to an eviction and was so treated by defendant.

The judgment of nonsuit was properly granted and it is affirmed.  *Affirmed*

Mr. JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.