ANASTASEOS KOSTOPOLOS *vs.* JOSEPH PEZZETTI.

Suffolk.    November 21, 1910. — January 3, 1911.

Present : KNOWLTON, C. J., LORING, BRALEY, SHELDON, & RUGG, JJ.

*Agency*, Ratification of acts of agent.    *Landlord and Tenant.    Damages*, In tort: injury to business.    *Evidence*, Competency.

At the trial of an action of tort for damages resulting from an alleged unlawful ejection from certain premises, the validity of a lease under which the plaintiff had been in possession of the premises was in question, and there was evidence tending to show that one, who formerly had been collecting the rent from the tenant on behalf of the person named as lessor in a former lease, at the termination of that lease, assuming to act on behalf of and in the name of the lessor, but without his authority, knowledge or consent, executed and delivered to the tenant a new lease not under seal for a further term ; that thereafter the lessor, being informed by the rent collector of his act, stated to him, " I am sorry.  You ought not to have done it ; but, as long as you have done it, let it go " ; that the rent collector continued to collect the rents from the lessee for three months, when the lessor himself collected them for three more months, telling the tenant, in answer to a statement by him that he paid his rent to the collector, that he, the lessor, was the one who told the collector to give the tenant the lease, and that he, the lessor, was the one who was entitled to the rent.  *Held*, that there was evidence warranting a finding that the lessor ratified the act of the collector in making the lease ; and that such oral ratification made the lease valid as against the lessor.

One who unlawfully was ejected by force on a June 12 from premises, of which he was in possession rightfully and where for over six years he continuously had been carrying on a business of selling fruit at retail, and whose business had been interrupted by the eviction, is entitled to such damages as directly resulted from the wrong done to him ; but if it appears at the trial of an action to recover such damages that in the conduct of his business the plaintiff had closed the store during certain hours of each day while he and his men peddled fruit from wagons about the streets, and that about a month after the eviction the plaintiff had moved to a location within a few doors of the premises in question, where he continued his business, the plaintiff should not be allowed to testify as to the amount of his weekly profits for about five and a half months before the eviction unless there is some evidence to show that they afforded a fair measure of his business for the future.

TORT for damages resulting from the alleged unlawful eviction of the plaintiff from a store numbered 77 Winnisimmet Street in Chelsea, where he was carrying on a business.   Writ in the Municipal Court of the city of Boston dated June 11, 1908.

On appeal to the Superior Court the case was tried before *Hitchcock*, J.   It appeared that from some time in 1901 through 1904 the plaintiff occupied the premises as a tenant at will of the owner, one Marion E. Donnell, and carried on there a retail fruit store.   At certain hours of the day he closed the store while he and his men peddled fruit from wagons around the streets.   In 1902, one Arthur C. Stone was appointed conservator of the property of Donnell.

On January 1, 1904, Stone, assuming to act as conservator, executed and delivered to the plaintiff what purported to be a lease in writing and under seal of the premises for one year. On January 5, 1907, one Logan, who theretofore had collected the rent from the plaintiff for Donnell and for Stone, and who continued to do so for Stone until March, 1908, executed and delivered to the plaintiff, without the authority, knowledge or consent of Stone, a lease not under seal of the premises for two years.   Logan testified that shortly after doing so he told Stone of his action and that Stone said "I am sorry.   You ought not to have done it; but, as long as you have done it, let it go." After March, 1908, Stone himself collected the rent from the plaintiff.   The plaintiff testified that when Stone demanded the rent, he told Stone that he paid his rent to Logan, and that Stone said that he (Stone) was the one who told Logan to give the plaintiff the lease, and that he (Stone) was entitled to the rent. The rent accordingly was paid to Stone for the months of March, April and May, 1908.   The above testimony was controverted by evidence for the defendant.

On June 4, 1908, Stone, assuming to act as conservator of Donnell, executed and delivered to the defendant a lease under seal of the premises for the term of five years from June 1, 1908. The lease contained the clause, "This lease is subject to any existing leases."   On June 4, 1908, the defendant gave the plaintiff notice to quit without delay, and on June 12 ejected the plaintiff and his goods.   At the time the plaintiff had committed no breach of the lease to him dated January 5, 1907.

About a month after the eviction, the plaintiff hired a store at number 99 on the same street.

Subject to an exception by the defendant, the plaintiff was allowed to state what his profits per week were from January 5, 1907, to the date of his eviction.

Other facts are stated in the opinion.

At the close of the evidence the defendant asked the presiding judge to rule as follows:

"1. On all the evidence the plaintiff cannot recover.

"2. The lease from Logan to the plaintiff dated January 5, 1907, gave the plaintiff no title. He was therefore a tenant at will.

"3. The lease from Stone, conservator, to the defendant, terminated the tenancy at will of the plaintiff, and the plaintiff cannot recover."

The judge refused so to rule, and ruled that the lease given by Logan to the plaintiff, if ratified by Stone, would give the plaintiff a title to the premises as against the defendant, and that there was evidence for the jury of the ratification of the lease by Stone. He then submitted to the jury the question whether Stone ratified the Logan lease, which the jury answered "Yes." The jury found for the plaintiff; and the defendant alleged exceptions.

The case was submitted on briefs.

*C. W. Cushing*, for the defendant.

*W. H. Brown & J. H. Coakley*, for the plaintiff.

SHELDON, J. The lease given by Logan to the plaintiff did not come within the scope of Logan's agency, and was at first invalid. But the jury have found on sufficient evidence that it was ratified by Stone. It was not and did not need to be under seal, and its parol ratification made it valid as against him, whether or not it could have been enforced against Donnell the owner of the property. It then became the ordinary case of an agreement concerning real estate made by an agent in his own name, but adopted by the principal as his agreement. *Buffington* v. *McNally*, 192 Mass. 198. *White* v. *Dahlquist Manuf. Co.* 179 Mass. 427. *Duncklee* v. *Webber*, 151 Mass. 408. The case is not like *Lewis* v. *Buttrick*, 102 Mass. 412. The rights of the defendant, claiming only under Stone, were no greater than those of

Stone himself. It follows that the defendant had no right to eject the plaintiff, and his requests for rulings were rightly refused.

The plaintiff's damages were not necessarily limited to the value of his leasehold interest. He had been ejected by force from premises of which he was rightfully in possession, and the business which he was there carrying on had been interrupted. He was entitled to such damages as directly resulted from the wrong done to him. He could show the nature and extent of his business and the extent to which it had necessarily been interrupted and the expense which he had been obliged to incur to re-establish his business in another shop; but he ought not to have been allowed to testify to the amount of his weekly profits for the time immediately preceding his eviction. Those profits may have been unusually large, or may have been affected by exceptional circumstances. There was nothing to indicate that they afforded a fair measure of the value of his business for the future. See *Barnard* v. *Poor*, 21 Pick. 378; *Thompson* v. *Shattuck*, 2 Met. 615, 619; *Greene* v. *Goddard*, 9 Met. 212, 331; *Waite* v. *Gilbert*, 10 Cush. 177; *Whipple* v. *Rich*, 180 Mass. 477; *Stynes* v. *Boston Elevated Railway*, 206 Mass. 75.

For the erroneous admission of this evidence, the exceptions must be sustained; but the new trial will be upon the question of damages only.

*So ordered.*