No. 22529.

A. E. RADINSKY *v.* J. A. WEAVER AND VIRGINIA P. WEAVER, D/B/A WEAVER PRINTING CO.

(460 P.2d 218)

Decided October 27, 1969.

Victor F. Crepeau, for plaintiff in error.

Anderson & Pell, Louis F. Pell, Jr., for defendants in error.

*In Department.*

Opinion by Mr. Justice Lee.

Plaintiff in error, A. E. Radinsky, by this writ of error seeks reversal of a judgment for $2,212 entered against him in the district court of the city and county of Denver in favor of defendants in error, J. A. Weaver and Virginia P. Weaver. The parties will herein be referred to as "Radinsky" and the "Weavers."

On June 10, 1960, the Weavers, as lessees, entered into a five-year lease of a one-story building to be constructed by Radinsky, as lessor, on the rear portion of the premises at 1045 Acoma Street, Denver, Colorado, in accordance with architectural plans approved by the parties. The building was specifically designed for use by the Weavers as a printing plant and was completed on August 5, 1960. Although the building physically adjoined a building of

Radinsky's on the front portion of 1045 Acoma Street, it was otherwise completely separate therefrom, without any common entrance or other area which tenants of Radinsky's front building might share in common with the Weavers.

The lease between the parties did not reserve any portion of the leased premises, nor did it otherwise authorize Radinsky to add to or alter the leased building. On August 21, 1962, without the consent of the Weavers, Radinsky commenced construction of a second story on the building leased to the Weavers. Although the Weavers protested the construction of this second story, Radinsky continued with such construction. The Weavers then obtained an *ex parte* temporary restraining order halting further construction of the second story addition. This order was subsequently dissolved, after which Radinsky resumed the construction work.

The undisputed evidence showed that the construction work substantially interfered with Weavers' printing operations and as a result thereof Weavers vacated the premises on October 30, 1962.

The complaint alleged a breach of the lease agreement by Radinsky and sought relief by way of damages. Radinsky counterclaimed for the balance of rent due for the remainder of the term of the lease and for attorney's fees. Trial was to the court and at the conclusion thereof the court found for the Weavers and awarded them damages. Radinsky's counterclaim was dismissed and his motion to amend judgment or for new trial was thereafter denied.

Radinsky here asserts in substance three alleged errors: first, that the court's finding that Radinsky constructively evicted the Weavers from the leased premises was outside of the pleadings and no such issue was tried by the court; second, that the court's finding that Radinsky constructively evicted the Weavers from the leased premises was contrary to the law and the evidence; and third, that if there was a constructive eviction, the dam-

ages awarded by the court were contrary to the law, and unsupported by the evidence.

I.

Radinsky contends that the issue of constructive eviction was not properly pleaded and therefore not before the court. We find no merit in this contention. At the close of Weavers' case, counsel moved to amend plaintiffs' complaint to allege constructive eviction. Radinsky objected. The court in ruling on this motion stated: "Motion denied *at this time.*" (Emphasis added.) At the conclusion of the trial, although Weavers' counsel did not expressly renew his motion to amend, the court specifically found there was a constructive eviction. It is not necessary to review the many decisions of this court construing R.C.P. Colo. 15(b). It is sufficient to say that the trial court's qualified ruling, initially sustaining Radinsky's objection to the amendment of the complaint, did not preclude the court from considering all of the evidence offered and received, without objection, relating to the issue of constructive eviction, and thereafter concluding *that indeed* the issue had been submitted to the court for its determination. Failure to actually amend does not affect the result of the trial of the issue and the court's determination of this issue was without prejudice to Radinsky. In *Ward v. National Assn.*, 154 Colo. 595, 392 P.2d 162, the court stated:

"[1] Our examination of the very sketchy record before us indicates that issues not raised by the pleadings were nonetheless tried by the express consent of the parties. This being the situation, it is of no legal significance that the trial court entered judgment on a 'theory' different from the 'theory' pled in the complaint. In *Bridges v. Ingram,* 122 Colo. 501, 223 P. (2d) 1051 it was stated that 'if, *under the facts*, the substantive law provided relief upon any "theory," the cause should proceed to judgment' and that if such be the case 'the theory of the pleader is not important.'"

## II.

Radinsky argues that the evidence fails to establish that he intended to evict the Weavers from the demised premises, that his acts as a lessor must have substantially interfered with the Weavers' enjoyment and use of the leased premises, and that his interference with such enjoyment must have been permanent.

██ It is well-settled that in the absence of an agreement to the contrary, there is an implied covenant for the quiet enjoyment of the leased premises and the tenant is entitled to the possession of the premises to the exclusion of the landlord. *Boyle v. Bay*, 81 Colo. 125, 254 P. 156; *Cusack Co. v. Pratt*, 78 Colo. 28, 239 P. 22; *Milheim v. Baxter*, 46 Colo. 155, 103 P. 376. It is also well-established that any disturbance of a lessee's possession by his lessor which renders the premises unfit for occupancy for the purposes for which they were leased, or which deprives the lessee of the beneficial enjoyment of the premises, causing him to abandon them, amounts to a constructive eviction, provided the lessee abandons the premises within a reasonable time. *Candell v. Western Fed. Svgs.*, 156 Colo. 552, 400 P.2d 909; *Cusack, supra; Central College Co. v. Rutherford*, 47 Colo. 277, 107 P. 279; *Milheim, supra; Isabella Gold Mining Co. v. Glenn*, 37 Colo. 165, 86 P. 349; *Hyman v. Jockey Club Co.*, 9 Colo. App. 299, 48 P. 671.

As heretofore noted, no portion of the building was reserved to the lessor, nor were structural alterations or additions authorized by the lease. It contained no express provision which might negate the implied covenant of quiet enjoyment.

██ The evidence was undisputed that the purpose for which the building was designed and built, and leased to the Weavers, was to accommodate a printing plant which ideally required a one-story structure, free from vibrations, dust and dirt, under the sole control of the Weavers in order that the printing and photographic

processes involved in their business might be efficiently carried on.

When the second story construction was commenced, a hole was cut in the roof, permitting light to enter the "dark room." The flashings on the roof were removed, thus allowing rainwater to enter the premises, damaging materials and supplies; sand and dirt, by reason of construction activity on the roof, fell into the printing and photographic equipment; and conditions were such that normal business production could not be carried on. Such was done without any consent, with intent that a permanent second-story addition be added to the leased premises for the lessor's use, without any right under the terms of the lease. This constituted substantial interference with Weavers' quiet enjoyment of the premises, rendering them unfit for occupancy for the purposes for which they were leased. That Radinsky's actions were intentional is quite evident from the fact that he resumed construction in spite of Weavers' initial protests and upon dissolution of the restraining order.

The evidence further showed that the premises were vacated on October 30, 1962, as soon as the Weavers were able to find a suitable location to which they could move their printing business.

The court was correct in concluding a constructive eviction resulted by reason of Radinsky's unauthorized invasion of the leased premises.

### III.

Radinsky's final contention relates to the elements and amounts of damages awarded Weavers. The usual measure of damages in constructive eviction cases is the rental value of the unexpired term of the lease, less the rent reserved, together with whatever other losses which are the actual, natural, direct and proximate result of the wrongful eviction. *Milheim v. Baxter*, 46 Colo. 155, 103 P. 376; *Gray v. Linton*, 38 Colo. 175, 88 P. 749; *Jones v. Nathrop*, 7 Colo. 1, 1 P. 435; Streeter v. Marshall Silver Mining Co., 4 Colo. 535; *McKennon v. Anderson*, 49 Wash.

2d 55, 298 P.2d 492; *Buck v. Mueller*, 221 Or. 271, 351 P.2d 61.

The trial court awarded a total of $2,212 as damages, consisting of the following items: $200 for the air conditioner installed by the Weavers but left on the premises when they vacated; $390.50 for the cost of moving their business to the new location; $977 for the cost of remodeling the new place of business; and $645 for "doctor bills and other things."

Concerning the first item, the lease required Weavers to install the air conditioner and provided it would become the property of Radinsky on termination, on condition that Radinsky pay Weavers $200. Clearly this item was proper.

The cost of moving of $390.50 was proven by competent evidence and was allowable under the rule above set forth as a loss to Weavers directly attributable to the wrongful eviction.

Likewise the item of $977 for the cost of remodeling the new location was substantiated by invoices introduced into evidence without objection by Radinsky and such is a proper item of damage, consisting of expenses Weavers were obliged to incur in re-establishing their business at the new shop. *Kostopolos v. Pezzetti*, 207 Mass. 277, 93 N.E. 571.

Concerning the last item of $645 designated as for "doctor bills and other things," only a portion thereof is allowable. The evidence clearly established that Weavers suffered a loss of $309.82 for water damage to materials and supplies, caused by Radinsky's unauthorized construction. In reference to the doctor bills, which consisted of one bill for $40 and a second bill for $15, Weaver contended these items were the result of a nervous condition caused by his problems with Radinsky. No medical evidence was offered in support of this contention and, lacking competent medical testimony in support thereof, such expenses cannot be allowed. As to the remaining balance, the evidence was so confused, un-

certain, and indefinite as to amount to a failure of proof and, accordingly, the balance of the $645 is not allowable.

The judgment is modified by reducing the amount of damages assessed against Radinsky from $2,212 to $1,877.32. In all other respects the judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.