Alan COPELAND and Nicole Copeland,
Plaintiffs–Appellees,

v.

Stephen R. LINCOLN, Defendant–
Appellant.

No. 06CA0604.

Colorado Court of Appeals,
Div. VI.

May 17, 2007.

Houtchens, Houtchens & Greenfield, L.L.C., Warren W. Schaeffer, Greeley, Colorado, for Plaintiffs–Appellees.

Stephen R. Lincoln, Pro Se.

Opinion by Judge GRAHAM.

In this landlord-tenant action, defendant, Stephen R. Lincoln (Landlord), appeals the trial court's judgment in favor of plaintiffs, Alan and Nicole Copeland (Tenants), finding

that they had been constructively evicted. We affirm.

Tenants entered into a lease for a house with Landlord's predecessor in interest. Landlord bought the property in 2004 subject to the lease. During the tenancy, Tenants raised a number of issues regarding the condition of the property. The adequacy of Landlord's response to these issues, as well as the response of the prior owner, was disputed.

On Friday, March 4, 2005, the furnace was inspected by a heating company after Tenants had concerns regarding the amount of propane use and an alarm for a carbon monoxide detector installed by Tenants had gone off. The heating company determined that the furnace had a cracked heat exchanger and that the furnace was unsafe. Landlord was informed late that afternoon by the heating company that the furnace would need to be replaced. A copy of the inspection report was subsequently faxed to Landlord. The adequacy of Landlord's response to the notification that a new furnace was needed was disputed by the parties.

Landlord testified that he told Tenants that he would replace the furnace immediately, and the record shows that Landlord obtained a bid from the heating company, but found another vendor who would install the furnace for less money. Landlord testified that he had set up the delivery and installation of the new furnace for the following Wednesday.

Tenants testified that although Landlord told them he was going to install a new furnace, he did not tell them a specific date when the furnace would be installed. They also testified that the area was experiencing a record "cold snap" and that the temperatures in the house ranged between 45 and 55 degrees. Tenants testified that their family, which included two children, ages three and six, were forced to huddle near a small gas fireplace located in the living room. Tenants also testified that their request for assistance for temporary housing was rebuffed by Landlord. Consequently, Tenants testified that they contacted an attorney who advised them to move out of the house. By Tuesday, March 8, 2005, Tenants had substantially moved out of the house but had not removed all of their possessions by that time.

On Wednesday, when the furnace was set to be installed, Landlord discovered that Tenants had vacated the house. Landlord subsequently changed the locks on the house and retained possession of the items left by Tenants.

Landlord requested that Tenants pay the rent remaining under the lease as a consequence of breaking the lease and as a condition to obtain the return of their possessions. Tenants claimed, among other things, that they were constructively evicted from the house and that Landlord had converted their personal property. Landlord responded that he validly retained possession of Tenants' property and that they failed to give him the required notice pursuant to § 38–12–104, C.R.S.2006, which he argued set forth their only remedy.

Trial was held to the court. Following a hearing, the trial court took the matter under advisement and issued a written order finding that Tenants had been constructively evicted. The court found Landlord's testimony that he told Tenants that he would immediately replace the furnace was not credible. In addition, the court found that based on the hostility between the parties at that time, Tenants were unlikely to believe that Landlord would act quickly to replace the furnace.

The court also rejected Landlord's argument that § 38–12–104 provided the exclusive remedy available to Tenants. Accordingly, the court determined that Tenants' failure to provide written notice under this statute was not fatal to their constructive eviction claim. Thus, the court found that Tenants did not breach the lease by moving out and failing to pay further rent. The court also ordered the return of Tenants security deposit and awarded them damages in the amount of $2180 for the items retained by Landlord that were not returned or were returned damaged or broken. Landlord then brought this appeal.

## I.

Landlord contends that the trial court erred in not finding that § 38–12–104 was

the exclusive remedy available to Tenants when a hazardous condition of a gas appliance was reported. We disagree.

As pertinent here, § 38–12–104 provides:

(1) Anytime service personnel from any organization providing gas service to a residential building become aware of any hazardous condition of a gas appliance, piping, or other gas equipment, such personnel shall inform the customer of record at the affected address in writing of the hazardous condition and take any further action provided for by the policies of such personnel's employer. Such written notification shall state the potential nature of the hazard as a fire hazard or a hazard to life, health, property, or public welfare and shall explain the possible cause of the hazard.

(2) If the resident of the residential building is a tenant, such tenant shall immediately inform the landlord of the property or the landlord's agent in writing of the existence of the hazard.

(3) The landlord shall then have seventy-two hours excluding a Saturday, Sunday, or a legal holiday after the actual receipt of the written notice of the hazardous condition to have the hazardous condition repaired by a professional.

. . .

(4) If the landlord does not have the repairs made within seventy-two hours excluding a Saturday, Sunday, or a legal holiday, and the condition of the building remains hazardous, the tenant may opt to vacate the premises. After the tenant vacates the premises, the lease or other rental agreement between the landlord and tenant becomes null and void, all rights and future obligations between the landlord and tenant pursuant to the lease or other rental agreement terminate, and the tenant may demand the immediate return of all or any portion of the security deposit held by the landlord to which the tenant is entitled.

Initially, we note that, except with regard to whether § 38–12–104 provided the exclusive remedy available to Tenants, Landlord does not specifically challenge the trial court's finding of constructive eviction.

Thus, the question is whether § 38–12–104 abrogates the common law remedy of constructive eviction under the circumstances presented here. We conclude that it does not.

■ Generally, "any disturbance of a lessee's possession by his lessor which renders the premises unfit for occupancy for the purposes for which they were leased, or which deprives the lessee of the beneficial enjoyment of the premises" constitutes a constructive eviction, provided the lessee quits the premises within a reasonable time. *Radinsky v. Weaver,* 170 Colo. 169, 174, 460 P.2d 218, 220 (1969). Here, it is not contested that Tenants were constructively evicted for a combination of circumstances. Nor does Landlord claim protection under safe harbor provisions of § 38–12–104. Thus, we are only concerned with Landlord's argument that the statute somehow relegates Tenants to a single remedy and therefore abrogates the common law remedy of constructive eviction.

■ The supreme court has stated, "[W]here the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed." *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004). Statutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070 (Colo.1992). However, under either circumstance, the abrogation must be more than an "imagined connection." *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 611 (Colo.2005).

The plain language of § 38–12–104 does not demonstrate a clear intent by the General Assembly to modify or abrogate the common law. Rather, the statute sets forth special procedures that are applicable when there is a hazardous condition caused by an unsafe gas appliance. It requires that the tenant be notified by the service personnel,

that the landlord correct the problem within a specified time, and if the landlord does not so act, that the lease becomes null and void and the tenant is entitled to a refund of the security deposit. Thus, although this statute is applicable to the circumstances presented here, there is no indication that it was intended to replace, rather than supplement, any available common law remedies. Additionally, a review of the scope of § 38–12–104 does not compel a conclusion that the availability of this statutory remedy precludes a common law claim for constructive eviction. *See Argus Real Estate, Inc. v. E–470 Pub. Highway Auth., supra,* 109 P.3d at 610 (because court found no clear intent by the General Assembly to abrogate the common law doctrine of claim preclusion, it concluded that there was no exception to that doctrine in § 15–11–1106(2), C.R.S.2006).

Therefore, in summary, we conclude that the trial court properly found that § 38–12–104 did not abrogate Tenants' constructive eviction claim.

## II.

■ Tenants request that they be awarded, pursuant to C.A.R. 38(d) and § 13–17–102, C.R.S.2006, the costs and attorney fees they have incurred in defending against this appeal. However, because we conclude that the basis for Landlord's appeal is not so futile, irrational, or unjustified as to warrant a clear finding that his appeal is frivolous, Tenants' request is denied. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo. 1993); *Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo.1984).

The judgment is affirmed.

Judge DAILEY and Judge RUSSEL concur.